No. 47,829

STATE OF KANSAS, *Petitioner,* v. WAYNE L. ZEIGLER, *Respondent.*

(538 P. 2d 643)

Opinion filed July 17, 1975.

*Michael C. Cavell,* assistant attorney general, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the petitioner.

*William E. Scott,* of Kansas City, Kansas, argued the cause and was on the brief for the respondent.

*Per Curiam:* This is an original proceeding in discipline, initiated upon the filing of five separate complaints against the respondent, Wayne L. Zeigler, a member of the bar of this state, practicing in Johnson County. The State Board of Law Examiners, adopting the report of a hearing panel of the Board, recommended suspension from the practice of law for an indefinite period, based upon four of the complaints. Respondent filed his exceptions to the report and the matter is before this court for review. We will summarize the report of the Board.

COMPLAINT OF PATRICIA M. MUMMERT:

In December of 1971, complainant Patricia M. Mummert employed respondent to handle collections for her agency in Johnson County, Olathe Collections, Inc. Their agreement was that she would turn over accounts to respondent for collection and his authority would be limited to simply writing letters to the debtors, demanding payment. From the evidence it appears he was not authorized to file an action on any account unless such authority was given to him by the creditor.

Beginning in June of 1972, debtors began to complain both to Mrs. Mummert and to their creditors in regard to the type of letters being sent out over respondent's signature. Illustrative of some of the letters is complainant's exhibit No. 7 which, after the address to the debtor, reads:

"OH! THE JOY OF BEING SUED!!

"How do you explain to the neighbors and the kids when the Sheriff's car pulls up front and an officer hands you the summons?

"OR, how do you explain a garnishment to the boss, and the other fellows at work???

"I don't know, but I guess you do; at least you didn't bother to answer

my letter. You do not need to send me your check immediately to pay your account, because I am not going to bother you any more . . . but the Sheriff will. Oh yes, I will see you in court.

"You owe _____ $_____

"PAY ME NOW! ! !"

On June 21, 1972, following an investigation of the debtors' complaints, Mrs. Mummert sent a letter canceling respondent's employment, effective thirty days after the date of the letter. Subsequently, in a telephone conversation with respondent on June 24, 1972, complainant requested a copy of all collection letters he was using, and respondent mailed her a copy of one form letter, which she approved. He failed, however, to send copies of other form letters he was using, including "The Joy of Being Sued" letter.

Complainant testified she also employed respondent for a legal matter other than collections, which concerned an agreement she had for joint occupancy of the premises where her business was located. She had sold a part of her business to a Kansas City firm, and a stipulation of the sale agreement was that complainant was to be allowed to remain on the premises until August 30, 1972. She sought legal counsel when she was notified by the firm that it was no longer going to honor the joint occupancy agreement. She stated that respondent agreed to represent her for a fee of $500.00. Thereafter, on the day before the matter was to be finalized, respondent phoned her and advised her she had to pay him an additional fee of $1,734.68 before he would proceed. She testified she did raise the additional money that night because of the duress involved, and she paid respondent so he would continue to represent her in finalizing the matter.

Complainant further testified that although she had terminated respondent's services on June 21, 1972, she still worked with him on some accounts until September of 1972. When she sold her company on September 11, 1972, respondent had failed to account to her for money he had collected on some of the accounts that had been turned over to him.

Witness William C. Birchfield, President of Industrial Credit Association, [I. C. A.], which purchased Olathe Collections, Inc., from complainant on September 11, testified that in mid-September of 1972 he advised respondent that his services were terminated and that I. C. A. would begin using its own counsel. At that time he requested return of the files held by respondent, either to the I. C. A. office or to its attorney, Thomas J. Caenen, but the files

were never returned. Birchfield also testified certain moneys had been collected by respondent and no accounting had been made for those collections.

Testimony was detailed as to a complaint involving the collection of an account of the DeSoto Grain Company against Fred Egner. Respondent received a check for $450.00 from Egner, which he endorsed and placed in his trust account on July 7, 1972. He did not account to anyone for the proceeds of this check, claiming he was holding the money to protect himself on money owed to him on collections made by complainant. It was only after a Johnson County court hearing on November 10, 1972, at which a local grievance committee was present, that respondent remitted to the DeSoto Grain Company its portion of the collection.

Although respondent was hired as an attorney for complainant to process and collect accounts, it appears throughout the testimony in the Mummert complaint that he was attempting to acquire a proprietary interest in the accounts and was in fact seeking to eliminate complainant's interest in those accounts.

Respondent obtained approximately $120,000 in face value of accounts which complainant had not authorized him to process for collection. These were obtained through Mary Griffin, a trusted employee of complainant at the time of respondent's employment. Later, after her employment was terminated by complainant, it appears from the testimony that Mrs. Griffin was hired by respondent and continued to work the accounts as his employee. Further evidence concerning respondent's continuing activity was supplied through testimony of I. C. A. counsel, Thomas J. Caenen, and by I. C. A. President, William C. Birchfield. They testified that in mid-September of 1972 respondent was advised that his services were terminated on accounts he then held for collection. He continued to make collections and to work the accounts, contrary to supplemental instructions he received in a letter from Caenen dated October 5, 1972.

COMPLAINT OF JOHN AND DONNA LIBEL:

In February of 1973, complainant Donna Libel hired respondent in a child custody dispute with her former husband. She testified respondent was to represent her on a motion filed by her former husband to change the custody of the child to himself. He was also to represent her in obtaining child support and alimony payments upon which her former husband was in default. She paid

a $500.00 fee which she later discovered was a retainer only, and his total fee amounted to some $1,500.

Complainant charged that from the time she employed respondent until he was relieved of further duties in her case on September 18, 1973, he did not properly or expeditiously represent her. A hearing was called for February 28, 1973, on a motion filed by complainant's ex-husband to change the custody of their minor child, although no hearing was held. A journal entry was prepared which provided for visitation. Its provisions were contrary to the wishes of complainant and she so advised respondent; however, on August 3, 1973, the entry was submitted to the judge, signed, and entered by the court.

In addition to the foregoing, respondent collected money on the past-due child support and/or alimony through garnishment, but he refused to pay this money to complainant and instead put the money in his trust account. By his own testimony, respondent made no attempt to have the court allow his attorney fees against the ex-husband, but he looked entirely to complainant for his fees.

COMPLAINT OF MINNIE LOUGHIN:

This complaint grew out of an attempt to collect a judgment against Minnie Loughin for a dental bill. On September 9, 1971, the Loughins paid this bill in full. Complainant testified she advised respondent's office by telephone that the bill had been paid. Thereafter, without further investigation, respondent called Mrs. Loughin's husband's employer and told him he was going to issue a garnishment. He then sent the following letter (exhibit No. 2) to complainant's husband:

"WRITTEN NOTICE OF GARNISHMENT

"Dr. Sippy
    vs
"Charles Loughlin [sp]
RR # 1 Box 208 A
Stilwell, Kansas
"Since you have refused to pay this debt voluntarily or to keep your arrangements for payment:
"Court action is now required.
"Therefore be advised, your wages will be garnished. Twenty-five percent (25%) thereof will be taken for the payment of this bill unless the entire balance of $143.00 is paid immediately to Wayne L. Zeigler."

COMPLAINT OF LYNNE KOHLER:

This complaint grew out of the employment of respondent by complainant Lynne Kohler in a divorce proceeding. She had em-

ployed him previously in a separate maintenance and divorce action, but the parties had subsequently remarried. In this instance, respondent was employed by complainant on or about August 11, 1964. There was substantial difficulty in obtaining service on the defendant who had moved to Arizona, but finally service was obtained by publication. On February 18, 1965, the divorce was granted and complainant was in the courtroom to testify. It appears a controversy arose thereafter between complainant and respondent regarding fees owed respondent, including balances due on prior actions. Respondent advised complainant he would not obtain and file the formal divorce decree until she paid the balance of his fees. Nothing further was done until December 22, 1972, when complainant filed a complaint with the Johnson County Grievance Committee. The Committee advised respondent he was in violation of Rule 16 of the Johnson County Court, which required the prevailing party to promptly prepare a journal entry of judgment. On February 13, 1973, respondent prepared and filed a journal entry of judgment.

\* \* \*

Respondent contends the Board of Law Examiners erred in the admission of evidence and that the admitted evidence was insufficient to support the Board's conclusion that he violated the disciplinary rules identified in its report. He also argues the complaint against him failed to set forth with sufficient particularity the acts of misconduct with which he was charged. His final contention is that under the circumstances in this case suspension from the practice of law for an indefinite period is unduly and unreasonably harsh.

We will first consider respondent's contention that the charges against him were not made in compliance with Supreme Court Rule No. 207 (*b*) (K. S. A. 1974 Supp. 7-124), which requires the charges be set forth with sufficient particularity to inform the attorney clearly and specifically of his acts of misconduct. We have examined the record and find no formal complaint. It follows that the respondent was tried on written statements of the complaining witnesses. Whenever charges against an attorney do not inform him with sufficient particularity that he knows the basis of the charges he must defend, the complaint should be dismissed; but in this instance each of the written statements disclosed an attorney-client relationship, the incidents out of which

the charges arose, and respondent's acts of misconduct. Although many of the details relating to the acts of misconduct presented at the hearing were not disclosed in the written statements, respondent had knowledge of what occurred equal to that of the complainants, and we cannot say he was not adequately informed as to the nature of the charges against him.

Respondent cites *State v. Berkley*, 214 Kan. 571, 520 P. 2d 1255, in support of his position. *Berkley* is not in point. In that case a formal complaint was filed, charging the Berkleys with advertising and soliciting. The Board found they violated the rule relating to conflict of interest. Here, the written statements related to misconduct in connection with incidents arising out of an attorney-client relationship—the same acts which resulted in the recommended discipline.

Respondent further contends the evidence was insufficient to form a basis for the conclusion that he violated certain identified disciplinary rules. In support of this contention, he isolates certain findings of the Board and attempts to argue the Board was in error in its findings and the conclusions based thereon. After analyzing respondent's contention we must admit some of the isolated findings of the Board, as well as its conclusions that they constituted violations of the disciplinary rules, may be questionable. We see no necessity for further consideration of the arguments made by respondent in view of violations found by the Board which we conclude were supported by the evidence.

In regard to the Mummert complaint, we find the following violations of the Code of Professional Responsibility (K. S. A. 1974 Supp. 7-124):

1. In response to the request that respondent forward copies of all demand letters he was mailing to account debtors, respondent sent a copy of one letter, notwithstanding the fact he was utilizing several other collection letters. We find such conduct was a violation of DR 1-102 (A) (4). (Engage in conduct involving deceit and misrepresentation.)

2. Respondent's use of "The Joy of Being Sued" letter set forth herein reveals a lack of sound professional judgment and violated DR 1-102 (A) (6). (Conduct that adversely reflects on fitness to practice law.)

3. Mummert requested a return of all accounts which were not active, and for an accounting, and Industrial Credit Association made the same request after it purchased Mummert's accounts. Respondent failed to return the accounts and failed to make any accounting. Such action on his part violated DR 9-102 (B) (1). (A lawyer shall promptly notify a client of the receipt of funds.) It also violated DR 9-102 (B) (4). (A lawyer shall promptly pay

or deliver to a client as requested by a client the funds or other properties in the possession of the lawyer which the client is entitled to receive.)

4. Respondent endorsed a collection check from Fred Egner drawn to the order of DeSoto Grain Company and placed the proceeds in his trust account. Respondent claims as an attorney he could properly endorse it and that he had a lien upon the proceeds. His failure to account for the funds, however, was in violation of DR 9-102 (B) (1) and (4).

5. Respondent sent out several form notices drawn in a manner similar to legal documents. These letters simulated legal processes and clearly misrepresented the truth. We find such action violated DR 1-102 (A) (4).

In regard to the Libel complaint, we find respondent prepared a journal entry providing for visitation rights for Mrs. Libel's former husband, contrary to her directions, and thus violated DR 7-101 (A) (1). (A lawyer shall not intentionally fail to seek the lawful objective of his client.)

In regard to the Loughin complaint, we find respondent simulated legal process by drafting and sending to Loughin a "Notice of Garnishment" letter in violation of DR 1-102 (A) (4). We also find respondent took action on an account after being informed the account was paid and without making any effort to learn if the information was correct. This violated DR 7-102 (A) (1). (A lawyer shall not take action on behalf of a client when he knows such action would serve merely to harass another.)

In regard to the Kohler complaint, we find respondent violated DR 1-102 (A) (6) in failing to file a journal entry in a divorce case because of a dispute over his fee.

Respondent's final contention is in regard to the discipline imposed. He claims suspension from the practice of law for an indefinite period is unduly and unreasonably harsh. His only argument is that the Board failed to consider the financial hardship which will be imposed on respondent and it failed to consider his many years of excellent and reputable practice of law.

In recent years, the law profession has extended its services through numerous innovations to many new segments of the population. This, together with a numerical growth, has brought into focus a demand for greater professional integrity. The Code of Professional Responsibility was adopted by this court on February 11, 1970, to become effective on July 1, 1970. Its adoption was an effort by this court to elevate the standards of professional conduct and strengthen their enforcement.

The desired confidence and faith of clients in members of the legal profession can only be obtained by a strict adherence to the

adopted code. Lawyers should accept as a part of their professional life an elevated standard of conduct not required by most of their non-lawyer associates. The responsibilities of the profession require, ". . . there must be exacted those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have, throughout the centuries, been compendiously described as 'moral character.'" (Concurring opinion by Mr. Justice Frankfurter, in *Schware v. Board of Bar Examiners*, 353 U. S. 232, 247, 1 L. Ed. 2d 796, 77 S. Ct. 752.)

In view of the foregoing concepts of the obligations of members of the legal profession, and in view of the failure of respondent to abide by the accepted standards of professional conduct as herein concluded, we cannot say the punishment invoked was unduly and unreasonably harsh.

The State Board of Law Examiners was created by rule of this court (K. S. A. 1974 Supp. 7-124, No. 202 [a]), as an adjunct of the court to have general supervision over the discipline of attorneys. The role of the Board is similar to that of a commissioner appointed by this court to conduct hearings and to make a report of his findings, conclusions, and recommendations. Although such a report is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony. (See, 7 C. J. S. Attorney and Client, § 37, p. 805.)

We have no hesitancy in concluding the findings of the Board were amply sustained by the evidence and respondent's acts of misconduct justify the discipline recommended by the Board of Law Examiners.

It is therefore by the court considered, ordered and adjudged that Wayne L. Zeigler be and he is hereby suspended from the practice of law for an indefinite period. Costs of this proceeding are taxed to respondent.

FROMME, J., not participating.