No. 47,563

STATE OF KANSAS, *Respondent,* v. ANTHONY R. RUSSO, *Petitioner.*

(630 P.2d 711)

Opinion filed June 29, 1981.

*Roger N. Walter,* disciplinary counsel, was on the brief for respondent.

*Donald R. Hoffman,* of Humpage, Berger and Hoffman, of Topeka, was on the brief for petitioner.

*Per Curiam:* In these original proceedings, Anthony R. Russo, a former attorney disbarred by consent, petitions the Supreme

Court seeking reinstatement as an attorney and readmission to the bar of Kansas.

The petitioner was first admitted to the practice of law in Kansas in 1962 and thereafter practiced law in Wyandotte County until he voluntarily surrendered his certificate and privilege to practice law on June 17, 1976, following the institution of disciplinary proceedings. On November 14, 1973, petitioner was charged in a grand jury indictment in the United States District Court for the District of Kansas with conspiracy to violate the Kansas laws against prostitution and bribery as precluded by the criminal laws of the United States, 18 U.S.C. § 1952 and 18 U.S.C. § 371. The charge grew out of the operation of certain houses of prostitution in Wyandotte County by a client of the petitioner and allegations that the client conspired with Mr. Russo to bribe certain police officials and thereby obtain protection from raids upon the houses of prostitution, and the enforcement of the criminal laws relating to prostitution. Mr. Russo went to trial before a jury and was convicted. His conviction was affirmed by the United States Circuit Court of Appeals, Tenth Circuit, in *United States v. Russo,* 527 F.2d 1051 (1975), *cert. denied* 426 U.S. 906 (1976).

Following his conviction in federal district court, the disciplinary administrator filed a complaint against Mr. Russo on June 12, 1974. Proceedings on the complaint were held in abeyance pending the outcome of an appeal. After exhausting his appeals, Mr. Russo voluntarily surrendered his certificate to practice law in Kansas and the same was accepted by the Supreme Court on June 24, 1976. *In re Russo,* 220 Kan. 181, 551 P.2d 787 (1976). Petitioner served approximately seventeen months at the United States Penitentiary in Leavenworth and was released November 22, 1977. Petitioner also paid a $10,000.00 fine.

On February 13, 1980, Mr. Russo filed a petition with this court seeking reinstatement to practice law pursuant to Rule 219 (225 Kan. lxxxix). The matter was then referred to the disciplinary administrator and assigned to a panel of the Kansas Board for Discipline of Attorneys for investigation and recommendation. On June 13, 1980, a hearing was held before the panel in the Municipal Office Building at Kansas City, Kansas. No objections were made to the notice of hearing, the composition of the hearing panel or the proceedings before the panel. Numerous

reputable citizens appeared before the panel to urge the reinstatement of the petitioner and to vouch for his good character and reputation. No evidence or testimony adverse to the petitioner was presented by the disciplinary counsel. The transcript of the proceedings covers 251 pages of testimony presented by twenty-five witnesses for the petitioner, including his testimony. It would serve no useful purpose to detail the testimony and suffice it to say it was all favorable to petitioner. Nine exhibits were offered and admitted on behalf of the petitioner and the disciplinary administrator introduced four exhibits.

On September 12, 1980, the hearing panel filed its report detailing the evidence presented together with its findings and unanimously recommended that petitioner be reinstated to the practice of law in Kansas upon the successful passing of the Kansas bar examination. As the report of the panel was favorable, the petitioner filed no exceptions to the report and took no further action, all as contemplated by Rule 219(c).

On October 31, 1980, this court issued its order denying the petition for reinstatement. On November 10, 1980, the petitioner filed a motion for rehearing or modification which was considered by the court and denied on December 10, 1980. On December 24, 1980, petitioner filed a motion for an order allowing him to file a brief presenting constitutional questions alleging that his constitutional rights to due process and equal protection had been violated. This motion was granted, petitioner and the office of the disciplinary administrator have filed briefs, the complete transcript of the proceedings before the panel has been made a part of the record and the court has now studied and considered the petition for a third time, along with the complete record. A majority of the members of this court remain of the opinion the petition of Mr. Russo for reinstatement should be denied.

At the outset we note that the reports and recommendations of the Board for Discipline of Attorneys and its hearing panels are advisory only and not binding upon the court. Rule 212(f), 227 Kan. xxvii; *State v. Phelps,* 226 Kan. 371, 598 P.2d 180 (1979), *cert. denied* 444 U.S. 1045 (1980); *In re Dunn,* 223 Kan. 9, 569 P.2d 366 (1977).

Petitioner argues that the orders of this court entered October 31, 1980, and December 10, 1980, were arbitrary and discrimina-

tory because the court did not have, and obviously had not considered, an actual transcript of the proceedings held on June 13, 1980, before the panel. Thus, it is contended petitioner's right to due process of law was violated. Petitioner also contends his constitutional rights to equal protection of the laws have been violated. We do not agree. The report of the hearing panel reviewed in detail and itemized the thirteen documentary exhibits, identified the twenty-five witnesses who testified and summarized at length the testimony of the witnesses. An actual detailed examination and consideration of the entire transcript and documentary evidence merely confirms that the court was fully cognizant of the proceedings before the panel and the nature and extent of the evidence considered by the panel. Petitioner's claim that he has been denied due process of law is without merit.

The fundamental question raised by petitioner is whether this court in a disciplinary or reinstatement proceeding may make a determination contrary to the recommendations of the hearing panel. While the evidence before the panel indicates that many respected members of petitioner's community sincerely believe that he has been totally rehabilitated and should be again admitted to the practice of law, it is this court's duty to determine whether the readmission of Mr. Russo to the practice of law would be in the best interests of justice and the people of the State of Kansas.

Petitioner, to avoid further disciplinary proceedings, voluntarily relinquished the privilege to practice law which had been granted to him in 1962. Such action was not taken lightly by petitioner and did not come about until over two years had elapsed from the time of his conviction and the filing of the complaint by the disciplinary administrator. During such period petitioner was involved in appealing his conviction as he had every right to do. However, once that conviction became final, it is conclusive upon this court and this court will not look behind the conviction or attempt to weigh the evidence leading to that conviction. Rule 202 (225 Kan. lxxxi); *In the Matter of Hiss,* 368 Mass. 447, 333 N.E.2d 429 (1975). Although Mr. Russo contends to this day that he is innocent of the charges against him, the conviction must stand as a conclusive determination on the issue of his guilt to conspire with others to violate the laws against prostitution and to bribe police officers.

It is the duty of the Supreme Court to preserve the high ethical and moral standards required before a person is entitled to enjoy the privilege to practice law. When one first petitions for admission to the bar, he must meet the qualifications required of a member of the profession. When a former attorney seeks reinstatement, he must meet an even greater burden than when he was originally admitted and must overcome the prior adverse conclusions of the court as to his fitness to practice law. *Matter of Keenan,* 313 Mass. 186, 221, 47 N.E.2d 12 (1943); *State, ex rel. Sorensen v. Goldman,* 182 Neb. 126, 153 N.W.2d 451 (1967). Although it may be said that Mr. Russo "voluntarily" surrendered his certificate to practice law, the same was only done when it became apparent that disbarment was inevitable, and such surrender constitutes a voluntary disbarment. The decision whether reinstatement of an attorney is justified and will be granted rests exclusively within the discretion of the court (*Application of Daniel,* 315 P.2d 789 [Okla. 1957], 70 A.L.R.2d 265; *In re Bennethum,* 278 A.2d 831 [Del. 1971]) and the public interest in maintaining the integrity of the administration of justice is paramount in making such a determination.

A review of the cases concerning reinstatement to the practice of law discloses several factors which have been traditionally considered by the courts. These factors include: (1) the present moral fitness of the petitioner, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of petitioner's rehabilitation, (4) *seriousness of the original misconduct,* (5) conduct subsequent to discipline and (6) the time which has elapsed since the original discipline. See Annot., 70 A.L.R.2d 268. Additional factors include (1) the petitioner's character, maturity, and experience at the time of disbarment and (2) the petitioner's present competence in legal skills. *In re Brown,* _____ W. Va. _____, 273 S.E.2d 567 (1980).

In *In re Brown,* it was determined that reinstatement should be denied based solely upon the serious nature of the criminal conviction and its adverse effect upon the legal profession and the administration of justice. Brown had been convicted of a violation of 18 U.S.C. § 371, based upon charges involving conspiracy to bribe certain public officials, the same offense for which Mr.

Russo was convicted. Brown was also convicted of bribery of a juror. In denying reinstatement the West Virginia court stated:

"Woven throughout our disciplinary cases involving attorneys is the thought that they occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the even-handed administration of justice. Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness. Because the legal system embraces the whole of society, the public has a vital expectation that it will be properly administered. From this expectancy arises the concept of preserving public confidence in the administration of justice by disciplining those lawyers who fail to conform to professional standards.

. . . .

"Because of the extremely serious nature of applicant's original offense of bribing a juror when coupled with the separate conviction of conspiring to bribe public officials, we cannot help but conclude that his reinstatement would have a justifiable and substantial adverse effect on the public confidence in the administration of justice. The nature of these crimes directed as they are to the core of the legal system and the integrity of governmental institutions demonstrates a profound lack of moral character on the part of the applicant.

"We have held in *Smith* that the seriousness of the underlying offense leading to disbarment may, as a threshold matter, preclude reinstatement such that further inquiry as to rehabilitation is not warranted. The offenses involved in this case manifestly meet this test and for this reason applicant's petition for reinstatement is denied." _____ W. Va. at _____, 273 S.E.2d at 570 and 574.

In two recent cases the Supreme Court of Maryland denied reinstatement over the recommendations of the hearing panel and the review board that the attorneys be reinstated. The two cases were consolidated and involved Frances Dippel, who was convicted of embezzling clients' funds, and Thomas Raimondi, who was convicted of attempting to bribe a member of the General Assembly of Maryland. *In re Raimondi and Dippel,* 285 Md. 607, 403 A.2d 1234 (1979). Both were denied reinstatement based upon the gravity of the original misconduct. The circumstances surrounding Raimondi's petition are amazingly similar to the instant case. Raimondi had been convicted of attempted bribery of a public official and was disbarred by consent on December 29, 1972. Raimondi was imprisoned and released from confinement in 1973. Unlike the present petitioner, he was granted a full pardon on May 27, 1975. At the hearing on his petition he produced, as did Mr. Russo, a number of individuals who praised him highly and testified to what a fine gentleman he was. He demonstrated substantial involvement in fraternal and civic affairs. Four and one-half years had elapsed since his resignation. During that time he had obtained a master's degree in public

administration and served two and one-half years as a hearing officer in the Insurance Division for the State of Maryland. The hearing panel and review board both found present fitness to resume practice and recommended reinstatement. In disposing of these requests, the following language of the Court is particularly pertinent:

"Where there has been a disbarment for crimes such as were committed by Dippel and Raimondi we regard the nature of the crimes and the circumstances surrounding them as one of the most important of the criteria to be considered on an application for reinstatement. Therefore, we focus in these two cases on the nature and circumstances of the original conduct.

. . . .

"It may not have been so labeled, but what courts do when faced with any application for reinstatement from a previously disbarred lawyer is to engage in a balancing process. On one side of the scale is placed the seriousness of the misconduct which produced disbarment and the court's duty to society at large to see that only those persons who are worthy of the faith and confidence of the general public are permitted to handle the affairs of others. In this regard, it must be remembered as Chief Justice Vinson said in *In Re Isserman,* 345 U.S. 286, 289, 73 S.Ct. 676, 97 L.Ed. 1013 (1953), *reversed on other grounds,* 348 U.S. 1, 75 S.Ct. 6, 99 L.Ed. 3 (1954), *'There is no vested right in an individual to practice law. Rather there is a right in the Court to protect itself, and hence society, as an instrument of justice.'* On the other side are placed the subsequent conduct and reformation of such individual, his present character, his present qualifications and competence to practice law, and the fact that the very nature of law practice places an attorney in a position where an unprincipled individual may do tremendous harm to his client. In this balancing process consideration must be given to the length of time which has elapsed since disbarment. Also, it must not be forgotten that a disbarred attorney was previously found to possess good moral character. Otherwise, he would not have been admitted to practice law. Thus, either someone erred in the earlier evaluation of his character or the weakness of character producing the earlier misconduct previously failed to manifest itself. For this reason such an applicant must undergo an even more exacting scrutiny than he did earlier. In evaluating the statements from others as to the present good moral character of an applicant for readmission it must not be forgotten that a disbarred lawyer - - like many people convicted of so-called 'white-collar' crime - - had earlier occupied a position in society where it is probable that testimonials as to his good moral character, similar to that elicited in connection with his application for reinstatement, could have been obtained at any point in time prior to knowledge of his misconduct on the part of those attesting to his good character.

. . . .

"Raimondi was convicted of an attempt to bribe in connection with the highly unusual situation in which the General Assembly of Maryland was obliged to elect a Governor to serve a little more than two years of the remaining term of the Governor previously elected by the people. Such conduct strikes at the very fundamentals of our government, and the more so when it is perpetrated by a

member of the Bar sworn to support the Constitution and laws of this State. See Maryland Code (1957) Art. 10, § 10.

"Balancing all of the above mentioned factors and particularly taking into consideration the conduct for which Messrs. Dippel and Raimondi were disbarred and the time which has elapsed since then, we are unwilling to once again constitute them officers of this Court, thereby placing them in a position where they may handle the affairs of others. Thus, their petitions for reinstatement will be denied." 285 Md. at 617-620. (Emphasis added.)

Conspiracy to bribe a police officer in order to protect and promote other illegal activities is an offense that is totally repugnant to the administration of justice and the duties of an attorney who has taken a solemn oath to uphold the constitutions and laws of the United States and the State of Kansas. Such an offense strikes at the very heart of our criminal justice system and if tolerated could completely destroy our system of justice as it has always existed in this country. It is obvious from the cases that each petition for reinstatement must be considered on its own merits and that such decisions must be made on a case by case basis depending upon the facts involved. The refusal to grant Mr. Russo reinstatement to practice law in spite of the recommendations of the hearing panel does not deprive him of equal protection of the law. Considering the gravity of the offense for which petitioner was originally convicted, a majority of this court is of the opinion that the petition of Anthony R. Russo for reinstatement at this time to the practice of law in Kansas must be and is hereby denied.

PRAGER, J., dissenting:

I respectfully dissent. On the basis of the report of the hearing panel and the evidentiary record, I would reinstate the petitioner, Anthony R. Russo, to the practice of law. The Supreme Court has consistently held that, although a report of a disciplinary hearing panel is advisory only, it is to be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence. *State v. Zeigler,* 217 Kan. 748, 755, 538 P.2d 643 (1975).

The petition of Russo for reinstatement was heard by a hearing panel consisting of three outstanding and able members of the bar who, in the past, have demonstrated a great interest in and dedication to the legal profession and the administration of justice. At the hearing before the hearing panel, twenty-five

witnesses appeared on behalf of petitioner's application for reinstatement. The disciplinary administrator did not call a single witness to the stand in opposition to the testimony of these witnesses. The reinstatement of Russo to the practice of law was recommended by the Honorable Harry G. Miller, then administrative district judge of Wyandotte County, Kansas, and his associate, the Honorable William M. Cook. The Honorable O. Q. Claflin III, retired district judge and a member of the Judicial Qualifications Commission, testified on behalf of reinstatement. Other witnesses who testified for the petitioner were (1) representatives for the Kansas Insurance Department and the Kansas Real Estate Commission; (2) various members of the bar of Wyandotte County who have been acquainted with the petitioner since he took up the law practice in that county in the 1960's; and (3) respectable businessmen from Wyandotte County. Also testifying for Russo's reinstatement were the present mayor of Kansas City, Kansas, who has known the petitioner for fifteen years, and a former mayor who has served as state senator, judge of the city court of Kansas City, and city attorney. Two of the present Wyandotte County Commissioners testified on behalf of the petitioner along with a member of the Kansas City Civil Service Board. I also note the testimony of Michael Lerner, attorney and chairman of the Wyandotte County Grievance Committee, who was one of the petitioner's attorneys in the proceeding which led to the suspension of petitioner's license. Petitioner and his wife also testified on his behalf. In opposition to this testimony, not a single live witness appeared to testify against petitioner's reinstatement.

In recommending reinstatement of Russo's license for the practice of law, the hearing panel listed six factors which it considered. These are essentially the same factors which are discussed in the majority opinion and set forth in syllabus ¶ 4. The report of the hearing panel stated in part as follows:

"The State's Trial Brief lists six factors generally considered by courts in determining an applicant's present fitness to be reinstated to the practice of law. Each of these factors will be considered with reference to the evidence presented at the hearing.

"1. Petitioner's present moral character and ethical fitness *establishing him as a trustworthy member of the bar*

"In the Panel's view, this is the paramount consideration in that it focuses upon the protection which is due the legal profession and the general public. As the

State's Trial Brief points out should be the case, the public interest is the primary consideration guiding this Panel's recommendation. The evidence presented at the hearing was overwhelming that Petitioner's present moral character and ethical fitness establish him as a trustworthy member of the bar.

"The Panel finds, based upon the evidence presented at the hearing, that the conduct of Petitioner subsequent to the time of his release from incarceration for his prior felony conviction *displays those qualities of resolve and attitude of mind* required of an attorney as an officer of the court and by the oath he takes in becoming an officer of the court. The Panel's reasoning, based upon the basic facts established by the evidence, is as follows:

"(a) Since his release, Petitioner has won the respect of business associates and employers and the approval of government agencies of the State of Kansas, and has displayed diligence, devotion to performing his contractual obligations, and straightforward honesty in dealing with those with whom he has had contact.

. . . .

"(b) *Petitioner's attitude toward the legal system, which he feels rendered him an injustice in his prior conviction, continues to be one of loyalty, without bitterness, understanding that mistakes can be made, and lacking in any indication of intention on his part to abuse it, clients, adversaries or the courts in any way should he be reinstated.

. . . .

"(c) Prior to his conviction, Petitioner possessed the integrity and the technical skills of an honest, effective and unselfish attorney, and had the respect of the courts before whom he practiced, prominent attorneys who had occasion to observe his work in law practice, and clients who engaged his services, as well as former adversaries. . . .

"(d) Since his release, Petitioner's business activities and his life outside his former profession have been exemplary in every respect. . . .

"2.   Demonstrated consciousness of the wrongful character of prior misconduct and remorse for *the disrepute it has brought on the profession*

"This factor can be broken down into two parts:

"(a) Demonstrated consciousness of the wrongful character of the prior misconduct; and

"(b) Remorse for the disrespect it has brought on the profession.

"There is no question in the Panel's mind, both from the testimony of Petitioner and from the testimony of other witnesses who have known and been in close contact with Petitioner since his incarceration that he has a deep and genuine remorse for the disrepute which his conviction has brought, not only on the legal profession, but also upon his family. However, because of Petitioner's continued maintenance of his innocence of the conduct of which he was convicted, it is impossible for him to demonstrate a consciousness of the wrongful character of his prior misconduct. Put another way, if rehabilitation, within the meaning of Rule 219, can occur only when a petitioner admits prior misconduct, it is impossible for Petitioner, or anyone else who maintains that he is innocent of the charge of which he has been convicted, ever to be reinstated to practice law in the State of Kansas.

"The Panel is troubled by such a construction, and, after a great deal of consideration of the question is of the opinion that Petitioner's continued main-

tenance of his innocence should not, standing alone, prevent him from demonstrating that he has rehabilitated himself so as to be entitled to reinstatement. While the Panel concedes the wisdom of the Rule 202 provision making the certificate of a conviction of an attorney for any crime conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney based upon the conviction, so as not to enable the attorney to retry the prior criminal case, the Panel questions the wisdom or necessity in a reinstatement proceeding, where a number of other factors are necessarily involved, of an ironclad rule which absolutely rules out the possibility of a miscarriage of justice in the prior criminal case.

"The Panel has given due consideration to the fact that normally a demonstrated consciousness of the wrongful character of prior misconduct is necessary before an individual can show genuine remorse and change his conduct sufficiently so as not to again place himself in the same circumstances. In light of all the evidence presented at the hearing, the Panel is of the opinion that because of the facts and circumstances in this case, Petitioner should be allowed to demonstrate his rehabilitation and present moral fitness to practice law without renouncing his claim of innocence of the charge of which he was convicted.

"Although Petitioner does not admit the conduct of which he was convicted, there was a substantial amount of testimony to the effect that Petitioner has recognized that certain aspects of his prior attitudes and conduct led to his difficulties and that in these areas Petitioner's attitudes and conduct have changed for the better. This will be discussed in the following section of this opinion.

"3. Satisfactory showing of rehabilitation and *reformation overcoming the former finding of moral deficiency*

"Because of the fact of his prior conviction, and his loyalty to the legal system of which he now wants again to become a part, Petitioner appears to have the resolve to prove his integrity, honesty and technical skills to a greater extent than what might be expected of other practitioners or perhaps himself prior to his convictions of the crime. This conclusion is supported by testimony from a number of witnesses. To the extent that rehabilitation is viewed as requiring a change from one's former state or conduct, the Panel finds that testimony of the witnesses at the hearing satisfactorily establishes that such a change has occurred in Petitioner.

. . . .

"(e) Petitioner's own testimony was that the people who were really hurt were his family and other lawyers because his conviction reflected badly on other lawyers. He testified that in his view the only thing he can do to rehabilitate himself with other lawyers is to be reinstated and to do the very best he can. He testified that he knows he has to avoid the appearance of impropriety and that he has a commitment to do so, whether he is ever reinstated or not. He further testified that now, if there were ever a situation presented where he would be precarious, he would avoid it. He further testified that although it would have been easier for him not to apply for reinstatement, he elected to do so in order to fulfill what he sees as a commitment to the other lawyers. He testified that he has had lots of time to reflect on his life and that he would not go back to the practice of law as he knew it. He testified that he could have handled himself better as a lawyer and that he did make mistakes, that he should have been more careful with his clients and his communications with them, that he hopes that he can do it better in the future.

"4. The nature and seriousness of the misconduct *for which the applicant was disciplined*

"Although Petitioner was not convicted of having bribed or having attempted to bribe a police officer, he was convicted of having conspired to do so. The conduct of which Petitioner was convicted, and which led to the surrender of his license to practice law, is unquestionably serious. A conspiracy to bribe a police officer strikes at the heart of the legal system in that it is intended to subvert the honest and impartial operation of the system. The Panel is struck by the fact that Petitioner's conviction of this particular crime is totally out of character when set against the overwhelming evidence which in the Panel's view establishes Petitioner's good moral character and respect for and devotion to the legal system.

"5. Petitioner's conduct subsequent *to the discipline imposed*

"Petitioner's conduct subsequent to the surrender of his license has been fully discussed above in connection with other factors to be considered.

"6. The time which has elapsed between the disciplinary *action and the application for reinstatement*

"Although Petitioner surrendered his license to practice law on June 17, 1976, when his petition to the United States Supreme Court for a writ of certiorari was denied, the conduct for which Petitioner was convicted and which led to the surrender of his license occurred in 1972 or 1973. Regardless of which date is chosen as a reference point, the Panel believes that sufficient time had elapsed for Petitioner to be able to demonstrate his rehabilitation."

I agree with the majority as to the factors to be considered in determining whether a former attorney should be reinstated to the practice of law. I agree that the decision as to whether an attorney should be reinstated rests exclusively with the Supreme Court under its constitutional powers. I agree that the fact of the *criminal conviction* is not a matter to be disputed collaterally in a disbarment proceeding or on a hearing for reinstatement. Supreme Court Rule No. 202, 225 Kan. lxxxi, in the last paragraph provides:

"A certificate of a conviction of an attorney for any crime shall be conclusive evidence of *the commission* of that crime in any disciplinary proceeding instituted against said attorney based upon the conviction."

I disagree with the majority opinion that, in considering reinstatement, a disciplinary hearing panel and this court are totally precluded from examining the facts and circumstances involved in a prior criminal conviction for the purpose of determining whether or not there are aggravating or mitigating factors present.

The hearing panel noted petitioner's testimony on the circumstances which brought about his conviction. His testimony,

which was uncontradicted and which was the only evidence on the question, was substantially as follows:

"[I]n 1973 a client of Petitioner's told the Federal Bureau of Investigation that money which he had paid to Petitioner in 1972 or 1973 was not actually legal fees, but was instead protection money which Petitioner had agreed to pay to a police lieutenant of the vice squad to protect the client's massage parlors from raids. Petitioner reported the amounts paid as legal fees on his tax returns and paid income taxes on them. Petitioner was charged with conspiracy to bribe the police officer, but not with bribery, attempted bribery, or prostitution. The police officer was a codefendant in the trial and was acquitted on the basis that there was no bribery. Petitioner's client pleaded guilty to the charge of agreeing with Petitioner to bribe the police officer, and the jury found Petitioner guilty of the conspiracy."

It is important to note that the offense of which Russo was convicted was "conspiracy *to violate interstate travel* in furtherance of prostitution and bribery offenses, in violation of 18 U.S.C. 371." (Emphasis supplied.) He was neither charged nor convicted of bribery or attempted bribery or prostitution. According to the undisputed evidence in the record before us, Russo was convicted on the sole testimony of a former client who pled guilty to the same conspiracy charge of which Russo was convicted. I do not dispute that the charge brought against Russo and of which he was convicted was a serious charge amounting to a felony under federal law. I think it important, however, to emphasize, as did the hearing panel, that there was no evidence presented to show that Russo was guilty of either an attempted or completed crime of bribery or prostitution.

I have no quarrel with the cases cited in the majority opinion from other jurisdictions holding that the serious nature of a criminal conviction *may* have such an adverse effect upon the legal profession and the administration of justice as to justify the nonreinstatement of an attorney. I do wish to point out, however, that the circumstances in the two cases relied upon are not the same as the one presented in the case now before us. The majority opinion cites *In re Brown,* _____ W. Va. _____, 273 S.E.2d 567 (1980). In *Brown,* a full evidentiary hearing was had before the ethics committee of the West Virginia State Bar, which filed a written report *opposing* the reinstatement of Brown's petition to practice law. Furthermore, in *Brown,* the applicant for reinstatement had been adjudged guilty of *three separate counts of conspiracy* and the *actual bribery of a juror.* There is no testimony set forth in *Brown,* comparable to the extensive testimony presented in this case, supporting Brown's reinstatement as an attorney. The

facts in the *Brown* case are thus not comparable to the facts in the case now before us.

The majority opinion also cites and relies upon the Maryland case of *In re Raimondi and Dippel,* 285 Md. 607, 403 A.2d 1234 (1979). In *Raimondi,* the attorney seeking reinstatement had been convicted of an *actual attempt to bribe a member of the Maryland General Assembly.* I, likewise, do not find in the factual circumstances of *Raimondi,* the overwhelming support for Raimondi's reinstatement as was provided by the distinguished judges and lawyers of Wyandotte County in the Russo case.

Anthony R. Russo, a graduate of Washburn University Law School, was admitted to practice in the courts of Kansas in 1961. The only blot in his entire career was the conviction in federal court which caused him to surrender his certificate to practice law in 1976. There is no evidence whatsoever that Russo ever misappropriated a client's funds or represented a client in an inefficient or unprofessional manner. There is no evidence that he ever deceived a client or made a knowing misleading or untruthful statement to a court. Russo has been out of the practice of law since June of 1976, when he voluntarily surrendered his certificate. I consider this five-year period of suspension a sufficient disciplinary penalty under all the circumstances. I believe that he deserves another chance and I would afford him one by granting his petition for reinstatement.

As noted in the majority opinion, in considering the reinstatement of a disbarred attorney, the Supreme Court has the duty to balance all of the various factors in determining whether or not reinstatement would be granted. Each case must be decided on a case-by-case basis. Under all of the factual circumstances here and in view of the unanimous recommendation of the hearing panel of the disciplinary board, I would grant the petition of Anthony R. Russo for reinstatement to the practice of law in this state.