**In the Matter of Phillip E. GUTMAN.**

No. 582–S–188.

Supreme Court of Indiana.

Sept. 25, 1992.

Robert W. McNevin, Indianapolis, for respondent.

Charles M. Kidd, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This case is before us on a petition for reinstatement to the practice of law by Petitioner Phillip E. Gutman. After a hearing pursuant to Admission and Discipline Rule 23, Section 18, a majority of the Supreme Court Disciplinary Commission adopted the findings of the Hearing Officer and tendered to this Court its recommendation that the Petitioner should not be reinstated. The Petitioner moved for review, and the parties briefed their respective positions. Accepting the Commission's recommendation, this Court entered an order on June 8, 1992, denying the petition for reinstatement. This opinion more fully sets out the particular findings and our determination of how such findings support each of the elements found in Admis.Dis.R. 23(4)(b).

Admis.Disc.R. 23(4) allows a person who has resigned from the bar to petition for reinstatement after five years have elapsed from the date of the order accepting the resignation. If costs have been imposed, they must be paid before a petition for reinstatement may be filed. Subsection (b) of that rule further provides that the petition for reinstatement may be granted if the petitioner establishes by clear and convincing evidence before the Disciplinary Commission that:

(1) He desires in good faith to obtain restoration of his privilege to practice law;

(2) He has not practiced law in this State or attempted to do so since he was disciplined;

(3) He has complied fully with the terms of the order for discipline;

(4) His attitude towards the misconduct for which he was disciplined is one of genuine remorse;

(5) His conduct since the discipline was imposed has been exemplary and above reproach;

(6) He has a proper understanding of and attitude towards the standards that are imposed upon members of the Bar and will conduct himself in conformity with such standards;

(7) He can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence, and in general to aid in the administration of justice as a member of the Bar and an officer of the Courts; ...

Adopting the findings and determination of the Hearing Officer, the Disciplinary Commission concluded, by a four to two vote, that this Petitioner failed to sustain his burden of proof particularly under Rule 23(4)(b)(4) on the issue of remorse, (4)(b)(6) on the issue of understanding of and conformity with professional standards, and (4)(b)(7) on the issue of professional fitness. The Petitioner challenged this determination arguing that the substantial evidence of exemplary conduct since his resignation should be sufficient to sustain his burden under the rule.

In reviewing the Commission's findings and recommendation in this reinstatement proceeding, we employ the review process applicable to disciplinary actions before the Court. Said process involves a *de novo* examination of all matters tendered before the Court. The Hearing Officer's findings, in this instance findings adopted by a majority of the Commission, receive emphasis due to the unique opportunity for direct observation of witnesses, but they are not binding, and this Court reserves the right to reach the ultimate determination. *In re Gemmer* (1991), Ind., 566 N.E.2d 528; *In re Kern* (1990), Ind., 555 N.E.2d 479.

On September 6, 1985, this Court accepted Petitioner's resignation from the Bar tendered pursuant to Admission and Discipline Rule 23, Section 17, and concluded as moot the disciplinary action pending against him at that time. *In re Gutman* (1985), Ind., 482 N.E.2d 456.

The basis of the disciplinary complaint was criminal conduct culminating in a guilty verdict by a jury in the United States District Court for the Southern District of Indiana of conspiracy to commit extortion and interference with commerce by extortion, in violation of 18 U.S.C. S 1951. The opinion of the United States Court of Appeals, Seventh Circuit, which affirmed Petitioner's conviction, set out the circumstances surrounding the underlying crime. *U.S. v. Gutman*, 725 F.2d 417 (7th Cir. 1984).

During the time in question, the Petitioner was the President Pro Tem of the Indiana Senate. The case grew out of the efforts of the Indiana Railroad Association to get Indiana's "full crew" law repealed. In 1972, the Indiana Senate passed a bill to this effect which became law. Sometime in 1973, an arrangement for "something in return" was effectuated between the executive director of the Indiana Railroad Association and three members of the Indiana Senate, one of whom was the Petitioner. The "something in return" was $1,000 per month for five years, to be split among the three senators. The payments were a precondition to the senators' assisting the railroads in getting favorable legislation in the future. The payments were made from 1973 to 1976. Each $1,000 check was sent to one of the senators who then sent checks for $333 to Petitioner and the third co-conspirator. The Petitioner deposited his checks in a personal account rather than in the account of his law partnership. The prosecution was allowed to present evidence regarding a $40,000 check from the Association to Petitioner, although this was not part of the charges. This check the Petitioner again deposited in a personal account and did not report as partnership income. According to a railroad president's testimony, the payment was a bribe or payoff for other assistance rendered by

the Petitioner to the railroads, although the Petitioner claimed that this fee was for legal services.

The disciplinary complaint charged the Petitioner with engaging in illegal conduct involving moral turpitude and conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 1–102(a)(1), (3) and (6); with using his public position to obtain a special advantage in legislative matters and accepting a thing of value when he knows that it is for the purpose of influencing his action as a public official, in violation of 8–101(A)(1) and (3); and accepting private employment in a matter in which he had substantial responsibility while he was a public employee and stating or implying that he is able to influence improperly or upon irrelevant grounds a legislative body in violation of 9–101(B) and (C) of the *Code of Professional Responsibility for Attorneys at Law.* Petitioner tendered his resignation after all appeals of his criminal conviction had been exhausted although he had already made arrangements with his law firm to wind down his professional responsibilities.

As a result of the conviction the Petitioner served approximately ten months in the Federal Penitentiary at Terre Haute, Indiana. Since October 7, 1985, he has been employed in the public finance department of a corporation where he develops projects and makes presentations in the tax exempt investment banking field almost exclusively to public service entities.

The unchallenged findings establish that more than five years have elapsed since the order accepting Petitioner's resignation; that he has paid all costs, and that he has substantially complied with the provisions of Admis.Dis.R. 23(26) and (27) requiring notice to clients. Under the specifically enumerated elements of Rule 23(4)(b), the findings establish that the petitioner desires in good faith to obtain restoration of his privilege to practice law; he has not practiced law in this state since the order accepting his resignation; he has complied fully with the terms of the Order Accepting Resignation; and his conduct since the dis-

cipline was imposed has been exemplary and above reproach.

Petitioner points out that the evidence in support of the latter issue is substantial. As part of this reinstatement process, the Disciplinary Commission sought input from the local Bar. In response, 21 letters were submitted, 19 of which strongly supported the reinstatement while two objected because of Petitioner's conviction for crimes concerning breach of the public trust. In addition, several witnesses testified favorably on behalf of the Petitioner on this point. Petitioner argues that this evidence of exemplary conduct since his removal from the Bar, or "clean time," conclusively establishes his rehabilitation and professional fitness.

In examining fitness to practice law, this Court exercises its duty to assure the public that those who hold licenses to provide service can be trusted to do so in a responsible and competent way. We consider whether an attorney can be trusted to keep his client's secrets, give effective legal advice, fulfill his obligations to the courts, and so on. *In re Oliver* (1986), Ind., 493 N.E.2d 1237.

Exemplary behavior since the misconduct is one of several elements which must be proved in order to successfully establish professional fitness after discipline. In addition, Admis.Dis.R. 23(4)(b) and particularly subsection (4)(b)(7) require a close analysis of a range of relevant issues. Because a petitioner for reinstatement comes before us with a record of impaired professional fitness, he must prove that he has overcome those weaknesses which produced the earlier misconduct, has been rehabilitated, and is now trustworthy. See *In re Rosellini* (1987), 108 Wash.2d 350, 739 P.2d 658, 660; *In re Brown* (1980), 166 W.Va. 226, 229, 273 S.E.2d 567, 570. Such petitioner bears a heavier burden than one who must prove fitness at an initial admission to the Bar. A petitioner for reinstatement must undergo a more exacting scrutiny, and a more rigorous showing of professional moral character is required for purposes of reinstatement than for original admission to

the Bar. See *In re Wegner* (Minn.1987) 417 N.W.2d 97, 99; *State v. Russo* (1981), 230 Kan. 5, 630 P.2d 711, 714; *In re Raimondi* (1979), 285 Md. 607, 403 A.2d 1234, 1240.

■ The present fitness to practice law of an attorney seeking reinstatement must be considered in light of the offenses for which the petitioner was disciplined. *In re Wegner, supra* at 100; *In re Brown, supra* 273 S.E.2d at 572. Indeed, a proper analysis under Admis.Dis.R. 23(4)(b)(7) would necessarily include, among other factors,[1] an examination of the nature of the misconduct for which the Petitioner was disciplined. This position is consistent with the standards for readmission prevalent in the majority of other jurisdiction where it is generally agreed that in assessing an application for reinstatement consideration must be given to the nature of the original offense. *In re Brown, supra;* also see *In re Pool, supra; In re Wegner, supra; State v. Russo, supra; In re Smith, supra; In re Rosellini, supra; In re Fleischman, supra; In re Raimondi, supra.*

■ In assessing the original misconduct we examine the nature and effect of the resulting consequences and the impact Petitioner's acts had on the public's confidence in the administration of justice and the integrity of the legal system. The view that reinstatement must be determined in part by ascertaining its impact on public confidence in the administration of justice and the integrity of the legal system has been expressed by many other jurisdictions. See *In re Brown, supra* 273 S.E.2d

at 570; see also *In re Pool, supra* 517 N.E.2d at 449. It is also one of the enumerated factors considered by this court in assessing disciplinary sanctions. *In re Gemmer* (1991), Ind., 566 N.E.2d 528; *In re Kern* (1990), Ind., 555 N.E.2d 479; *In re Hampton* (1989), Ind., 533 N.E.2d 122.

■ We agree with the view that this examination is a balancing process in which on one side of the scale we place the seriousness of the misconduct and on the other, Petitioner's subsequent conduct and his present character. *Raimondi, supra* 403 A.2d at 1239. The more serious the misconduct, the greater its negative impact on future rehabilitation and eventual reinstatement, the greater Petitioner's burden of proof to overcome the implication of unfitness which is conjured by the misconduct. See generally *In re Barton,* (1974), 273 Md. 377, 329 A.2d 102, 104; *In re Raimondi, supra* 403 A.2d at 1235, 1237. The seriousness of past misconduct is unquestionably an important consideration which cannot be eliminated by subsequent exemplary conduct. *In re Fleischman, supra,* 142 Ill.Dec. at 841, 553 N.E.2d at 355. As noted by the Commission, this Court's decision denying reinstatement in *In re Beck* (1976), 264 Ind. 141, 342 N.E.2d 611, supports the proposition that a conviction for a crime involving moral turpitude carries great weight even though there is a subsequent pardon. Conversely, where the original misconduct is of lesser severity, Petitioner's burden to prove rehabilitation is met more easily, and subsequent "clean time" carries great weight.

---

**1.** Other jurisdictions have enumerated several relevant factors to be considered in determining reinstatement. *See generally, In re Fleischman* (1990), 135 Ill.2d 488, 142 Ill.Dec. 838, 841, 553 N.E.2d 352, 355; *In re Pool* (1988), 401 Mass. 460, 517 N.E.2d 444, 447; *In re Wegner, supra* at 99; *In re Rosellini, supra* 739 P.2d at 660; *State v. Russo, supra,* 630 P.2d at 714; *In re Smith* (1980), 166 W.Va. 22, 24, 270 S.E.2d 768, 770; *In re Brown, supra; In re Raimondi, supra,* 403 A.2d at 1234. Among them are:

   1. The nature of the underlying misconduct;

   2. Petitioner's maturity and experience at the time of misconduct;

   3. The presence of physical or psychological illness or other extenuating circumstances which were susceptible to correction or change;

   4. The nature and extent of any resulting consequences on public confidence in the administration of justice and the integrity of the system;

   5. Specific conduct subsequent to the misconduct, including petitioner's attitude toward the misconduct, a demonstrated consciousness of the wrongfulness of his conduct and an attitude of genuine remorse;

   6. The time elapsed since the sanction;

   7. Good faith attempt at restitution;

   8. Petitioner's present character and competence in the law.

We see no useful purpose for a *per se* distinction based upon the sanction or the method whereby the sanction was imposed, i.e., resignation, agreement or contested hearing. The range of sanctions, including disbarment and resignation upon admission of misconduct, is relevant only indirectly to the extent that it reflects the severity of the underlying misconduct. Although not determinative, the sanction could serve as a guidepost in the evaluation of the underlying misconduct and the relative weight such misconduct receives. To the extent that suspension for a period of time reflects the relative seriousness of the misconduct, it carries an implication that the Respondent could be rehabilitated. Such a petitioner would have an easier burden of proving professional rehabilitation and fitness for return to practice than would a disbarred petitioner. Disbarment brings to mind an implication of unfitness far less subject to rehabilitation.

A resignation pursuant to admission of guilt indicates that the Petitioner was cognizant of his misconduct and was willing to spare himself and the system the burdens of a full proceeding. A resignation, however, will not render the admitted misconduct less serious than a judicial determination of the same conduct.[2]

Reviewing the findings of this case, we note that at the inception of the payments the Petitioner had been a successful practicing attorney for in excess of 15 years. He was an experienced, respected lawyer who had attained a rare and powerful position as President Pro Tem of the Indiana Senate. He used this office to extort money and his legal practice to disguise the extorted payments. This was not a random or isolated event, but a calculated scheme which continued on a monthly basis over five years. There is no evidence of physical or psychological illness or other extenuating circumstances which are susceptible to correction or change. All this leads us to the inescapable conclusion of Petitioner's extensive culpability.

Petitioner's crime was notorious and scandalous. It is one which strikes at the very heart of public trust in our institutions of government and the legal profession. It brought disrepute to the legal profession and erosion of public confidence in our system of government. The extremely serious nature of Petitioner's misconduct, the calculated and deliberate manner in which he extorted money for a long period of time, the betrayal of the public trust, and the substantial adverse affect on the integrity of a government institution present the Petitioner with a heavy burden to overcome the profound lack of moral character demonstrated by such acts.

Coupled with this factor is the Hearing Officer's assessment that Petitioner failed to demonstrate genuine remorse. The Petitioner testified that he regrets that he has not lived up to his own high standards for personal and professional conduct, and in so doing, has hurt himself, his wife, his children, his law partners, the General Assembly and the legal profession. The Hearing Officer determined that the fact remains that the Petitioner has no explanation for his misconduct and does not admit anything other than the use of poor judgment. The Hearing Officer found there was no apology, no offer of restitution to those whom Petitioner wronged, but only Petitioner's regret over how things had turned out for him. The Commission further found that the lack of restitution had an adverse impact on the assessment of remorse as well as their assessment of Petitioner's appreciation of the wrongfulness of his conduct.

Issues of mental state, such as remorse, often are not easily discernible. However, certain ostensible factors such as apology and concerted effort at restitution can provide strong indication of a remorseful state of mind. Although not a controlling consideration, whether restitution has

---

**2.** In his Affidavit of Resignation, which was submitted pursuant to Admission and Discipline Rule 23, Section 17, the Petitioner acknowledged that he could not present a defense. The rule requires such an admission, in part, because the alleged misconduct is contemplated as a factor in the event of future petition for reinstatement.

been made is relevant to the determination of rehabilitation. Failure to make restitution without justification has been considered a strong indication of lack of rehabilitation. *In re Pool, supra,* 517 N.E.2d at 448.

These observations led the Hearing Officer and the majority of the Commission to conclude that the Petitioner failed to demonstrate genuine remorse, failed to demonstrate a proper understanding of the standards that are imposed upon members of the Bar, and that it is not clear that he will conduct himself in conformity with such standards in the future, as required by Admis.Dis.R. 23(4)(b)(4) and (6).

To challenge this, the Petitioner points to the testimony of two witnesses, one indicating that the Petitioner has been extremely remorseful, embarrassed, and saddened at his own conduct, and one indicating that the Petitioner has accepted personal accountability in a uniquely gracious way. In addition, Petitioner points to two affidavits submitted as evidence in which the affiants refer to his remorse. As stated earlier, the Hearing Officer's findings are not binding but her assessment of all evidence and her judgment in reconciling inconsistent evidence carries great weight because of her unique opportunity to observe the witnesses. See *In re Kern, supra.*

Finally, a majority of the Commission concluded that the Petitioner failed to prevail in his burden of proof on the issue of professional competence. The Petitioner, who, at the time of the hearing had not practiced for almost eight years, testified that he attended seminars on federal tax law changes, municipal law, construction industry issues, and read the ABA magazine. Undoubtedly, evidence of compliance with Admission and Discipline Rule 29 concerning mandatory continuing legal education and with Admission and Discipline Rule 23(4)(b)(9) concerning the Multistate Professional Responsibility Examination (MPRE) (which on January 1, 1992, became mandatory for persons seeking readmission) would have been extremely persuasive on this issue. However, we are not convinced that the lack of such showing in this instance necessarily precludes a finding of professional competence in the law.

Having carefully examined all matters presented in this petition for reinstatement and with the foregoing considerations in mind, we find that the Petitioner has failed to meet his burden of proof under Admis.Dis.R. 23(4)(b)(4), (6) and (7). Accordingly, the recommendation of the Disciplinary Commission is accepted, and the petition for reinstatement is denied.