Bar Docket No. 08072

In the Matter of BENJAMIN L. EVANS, *Respondent.*

(841 P.2d 461)

On September 14, 1973, Benjamin L. Evans, respondent, was admitted to the practice of law in Kansas. He was suspended by this court on November 20, 1987, for failing to properly register under Supreme Court Rule 208 (1991 Kan. Ct. R. Annot. 151).

On September 30, 1992, respondent untimely notified the Disciplinary Administrator by letter, stating in part:

"Pursuant to Kansas Supreme Court Rule 207, this letter is to advise you that in 1981, I was convicted in the U.S. District Court for the District of Columbia of criminal offenses as follows: (1) mail fraud in violation of 18 U.S.C. 1341 and (2) obstruction of an official investigation in violation of 18 U.S.C. 1510. As a result of this conviction, I was disbarred by consent in the District of Columbia where I also was a member of the bar."

On July 6, 1981, the United States Attorney filed a Memorandum of United States Regarding Sentencing in *United States*

*of America v. Benjamin L. Evans,* Criminal No. 81-91, in the United States District Court for the District of Columbia. The Memorandum stated:

"On March 18, 1981, the defendant, BENJAMIN L. EVANS, was indicted by a Federal Grand Jury and charged with 12 counts of Mail Fraud (18 U.S.C. 1341) and 2 counts of Obstruction of an Investigation (18 U.S.C. 1510). On May 15, 1981, the defendant entered a guilty plea to Counts 3 and 14 (Mail Fraud and Obstruction of an Investigation) and is to be sentenced on July 7, 1981. We file this allocution memorandum to aid the Court in acquainting itself with the factors the government feels are pertinent to the Court's decision at sentencing.

"As was made clear on May 15, 1981, at the time of the defendant's guilty plea in this case, the defendant was an officer of this Court and a practicing attorney during the four years (1976-1980) relevant to this indictment. During that time he generated a scheme to defraud numerous clients that had entrusted injury cases to him as well as at least eight insurance companies that were forced to pay fraudulent claims. The defendant did this by any one or combination of ways. He knowingly would refer clients to certain physicians who would prepare false and fraudulent medical reports and bills. Often the client had never even seen the physicians and the medical report was totally made up. Sometimes the services and treatment were inflated by the physician and sometimes the injuries were inflated. In any event, in order to obtain favorable monetary settlements, the defendant knowingly caused these false medical reports to be submitted to the insurance companies who in turn paid off on the inflated claims. In some instances the defendant would forge the signature of his clients on release forms in order to settle at the fraudulently inflated amount and conceal the receipt of the settlement from his client and indeed totally embezzle the proceeds.

"As the Court is aware, and the defendant has admitted by his plea, when he became aware of the Postal Services investigation of him, he deliberately attempted to obstruct the investigation by telling Michael Jackson what to do and tell the investigator.

"It is not possible for us to spell out the exact amount of money the defendant received by falsifying all of the claims to the insurance companies. This is because, as the Court knows, for the most part, all of his clients had some legitimate cause of action or injury for which [they] were entitled compensation. However, because of the defendant's obvious greed, the insurance companies paid well more than they should have, and this money went into his pocket, not the clients'. Fraudulent claims mean higher rates for us all, or even the inability of some of us to obtain insurance. In short, the effect of the defendant's greed can logically be expected to be borne by all of us.

"It is our position that because of the above, the defendant deserves a substantial period of incarceration."

On October 30, 1992, the Clerk of the Appellate Courts received an undated letter in which respondent, pursuant to Supreme Court Rule 217 (1991 Kan. Ct. R. Annot. 162), voluntarily surrendered his license to practice law in the State of Kansas.

The court, having examined the files and records of the Office of the Disciplinary Administrator, finds that the surrender of respondent's license should be accepted and that respondent should be disbarred.

IT IS THEREFORE ORDERED that Benjamin L. Evans be and he is hereby disbarred from the practice of law in the State of Kansas and his license and privilege to practice law are hereby revoked.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Benjamin L. Evans from the roll of attorneys licensed to practice law in the State of Kansas and that respondent forthwith comply with Supreme Court Rule 218 (1991 Kan. Ct. R. Annot. 163).

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports and that the costs herein be assessed to the respondent.

Dated this 17th day of November, 1992.