No. 71,014

In the Matter of BRYAN E. NELSON, *Respondent.*
(874 P.2d 1201)

Opinion filed May 27, 1994.

*Bruce E. Miller*, disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Bryan E. Nelson* appeared pro se.

*Per Curiam:* This original proceeding in discipline was filed by the office of the Disciplinary Administrator against Bryan E. Nelson, of Overland Park, Kansas, an attorney admitted to the practice of law in the state of Kansas. The formal complaints filed against the respondent consist of four counts and allege violations of MRPC 1.4 (1993 Kan. Ct. R. Annot. 267); MRPC 1.15 (1993 Kan. Ct. R. Annot. 299); MRPC 3.3 (1993 Kan. Ct. R. Annot. 314); MRPC 4.1 (1993 Kan. Ct. R. Annot. 327); and MRPC 8.4(a), (b), (c), (d), and/or (g) (1993 Kan. Ct. R. Annot. 347). The respondent filed an answer admitting and denying allegations contained in the formal complaint.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held November 19 and December 6, 1993, at the Kansas Judicial Center in Topeka, Kansas. Disciplinary Administrator Bruce E. Miller appeared in person and the respondent appeared in person and proceeded pro se. The panel made the following findings and conclusions:

"COMPLAINT NO. B4845—COUNT I

FINDINGS OF FACT

"We find the following facts and conclusions were established by clear and convincing evidence as to this charge.

"1. Bryan E. Nelson, is an attorney at law, Kansas Attorney Registration No. 09344. His last registration address with the Clerk of the Appellate Courts of Kansas is 6900 College Boulevard, Suite 430, Overland Park, Kansas 66211.

"2. On September 10, 1992, Respondent pled guilty to attempted possession of cocaine, a class D. felony.

"3. As a result of Respondent's conviction, he was sentenced to a prison term of one and one-half (1½) to five (5) years. Although Respondent has appealed his sentence, he has not appealed his conviction.

"4. Respondent was imprisoned from December 15, 1992, to March 23, 1993. He was granted probation on or about March 23, 1993.

"5. While in prison, on or about March 8, 1993, Respondent's license to practice law was temporarily suspended by the Kansas Supreme Court pending final resolution of these disciplinary proceedings.

"6. Since February 1990, Respondent has been undergoing random urinalysis tests. All tests have been negative for illegal substances.

"7. Herbert C. Modlin, M.D., testified that he believes Respondent has completely recovered from his previous drug abuse and/or addiction.

"8. Respondent's legal competence of law and procedure are not in question. He is an extremely knowledgeable litigator. Moreover, many witnesses and testimonial letters, as to Respondent's outstanding legal abilities, were introduced and admitted into evidence during the hearing.

## "CONCLUSIONS OF LAW

"We conclude the following law is applicable to this charge.

### "RULE 8.4 Misconduct

"It is professional misconduct for a lawyer to:

. . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

. . .

(d) engage in conduct that is prejudicial to the administration of justice;

. . .

(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

"We conclude Respondent's actions violate MRPC Subsections 8.4(b), (d), and (g).

## "COUNT II

### "FINDINGS OF FACT

"We find the following facts and conclusions were established by clear and convincing evidence as to this charge.

"1. During the course of the criminal prosecution against Respondent (*State v. Nelson*, District Court Case No. K-62670), he and his attorneys made certain allegations that the police had planted cocaine in his automobile which he later admitted were false.

"2. At his plea hearing, Respondent testified to the following:

'Q. [By Mr. Fox] As Ms. Boettcher entered your car that night, it was your intention to receive cocaine from her; is that correct?

'A. [By Respondent] That's correct.

. . . .

'Q. You, additionally, have a statement that you wanted to make associated with the case. Would you make that statement.

'A. Any statements that I previously made which inferred or indicated that law enforcement planted the contraband in my car on the date in question were false, and

that I believe the District Attorney's Office and law enforcement acted professionally in both the investigation and prosecution of this case.'"

### "CONCLUSIONS OF LAW

"We conclude the following law is applicable to this charge.

"RULE 8.4 Misconduct

"It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

. . .

(d) engage in conduct that is prejudicial to the administration of justice;

. . .

(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.

"We conclude Respondent's actions violate MRPC Subsections 8.4(c), (d), and (g).

### "COMPLAINT NO. B5695—COUNT III

### "FINDINGS OF FACT

"We find the following facts and conclusions were established by clear and convincing evidence as to this charge.

"1. In July 1992, Lisa Hays retained Respondent to represent her in a workers' compensation claim. Hays left several documents concerning her claim with Respondent.

"2. When Hays attempted to call Respondent in March of 1993, she learned his phone had been disconnected.

"3. Respondent failed to reasonably keep Hays informed about the status of her case and his temporary suspension from the practice of law."

### "CONCLUSIONS OF LAW

"We conclude the following law is applicable to this charge.

"RULE 1.4 Communication

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"We conclude Respondent's actions violate MRPC Section 1.4.

### "COMPLAINT NO. B5698

. . . .

### "FINDINGS OF FACT

"We find the following facts and conclusions were established by clear and convincing evidence as to this charge.

"1. On or about July 27, 1992, Marcia Huehn retained the services of Respondent to represent Reginald Carter, who was incarcerated in the Missouri State Penitentiary. Huehn and Carter were later married in a ceremony conducted at the prison.

"2. Respondent was retained to prepare a petition for habeas corpus for Carter. The parties agreed, however, Respondent would not commence work on Carter's case until

Respondent received a total retainer of $2,000. On or about February 8, 1993, the full retainer of $2,000 was paid to Respondent by Huehn.

"3. None of the aforesaid retainer was placed in Respondent's trust account.

"4. In early April 1993, Respondent telephoned Huehn to tell her he was temporarily suspended from the practice of law. He also told her he had referred her husband's case to Gregory Vleisides, who would proceed with the case. Additionally, Respondent gave Huehn his home telephone number.

"5. Previously, Respondent had spoken with attorney Vleisides about representing Carter while Respondent was in prison. Vleisides agreed to talk with Carter about his case if Carter would call Vleisides.

"6. When Huehn had not heard from Vleisides by late May 1993, she wrote Vleisides concerning his representation of her husband. Vleisides, however, wrote her a letter, dated June 1, 1993, stating he had never heard of Carter and that Respondent had not referred this case to him.

"7. Shortly after June 4, 1993, Huehn and Carter both received letters from Respondent stating Vleisides was handling Carter's case and again confirming his earlier temporary suspension from the practice of law.

"8. On or about June 21, 1993, dissatisfied with little or no representation of her husband, Huehn wrote Respondent requesting the return of the $2,000 retainer.

"9. Respondent admits he owes Huehn approximately $2,000; however, he claims his dismal financial condition has prevented him from repaying Huehn.

"10. At the hearing, Vleisides confirmed that Respondent had phoned him about representing Carter while Respondent was in prison, but Vleisides testified that he had forgotten about his earlier conversation with Respondent. Furthermore, he stated that his June 1, 1993, letter to Huehn, stating he had never heard of Reginald Carter, was clearly a mistake on his part.

"11. Vleisides, however, is not now representing Carter, nor has he ever represented Carter in this matter."

### "CONCLUSIONS OF LAW

"We conclude the following law is applicable to this charge.

"RULE 1.4 Communication

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"RULE 1.16 Declining or Terminating Representation

. . . .

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

"We conclude Respondent's actions violate MRPC Section 1.4 and Subsection 1.16(d)."

The panel noted the following mitigating and aggravating circumstances, concluding with a recommendation for a plan of dis-

cipline involving indefinite suspension but recommending that the discipline be probated and that the respondent be placed on supervised probation under terms and conditions as set forth below:

## "MITIGATING CIRCUMSTANCES

"We take official notice of the following mitigating circumstances:

"1. Respondent has practiced law in this state for 17 years and during this period of time, his only other discipline involved an informal admonishment for neglecting a matter entrusted to him. This action was taken on June 1, 1988.

"2. Many witnesses and testimonial letters have been introduced and admitted into evidence substantiating Respondent's outstanding legal abilities and general good character.

"3. Respondent has undergone substance abuse therapy which is continuing and has refrained from the use of illegal substances for over three years. Moreover, Respondent has submitted to random drug screen testing and is agreeable to continue with said testing process.

"4. The Disciplinary Administrator has failed to present evidence of a pattern of misconduct on the part of Respondent.

## "AGGRAVATED CIRCUMSTANCES

"We take official notice of the following aggravating circumstances:

"1. Respondent has failed to repay the $2,000 retainer collected from Marcia Huehn.

## "RECOMMENDATION

"The Disciplinary Administrator has recommended that Respondent be disbarred. Although we agree that Respondent's breaches of conduct were extremely serious and could warrant disbarment, we are reluctant to recommend such unconditional discipline in this case.

"Although we do not condone Respondent's actions in these cases, we believe Respondent has already been sufficiently punished by the criminal justice system for his lapse of good judgment. He pled guilty to attempted possession of cocaine, a class D felony; however, he spent four months in prison for a crime for which many first-time offenders receive probation and/or community corrections.

"Additionally, it appears Respondent has completely recovered from his previous substance abuse. Moreover, in view of these mitigating factors, Respondent's disbarment would be inappropriately severe. We, therefore, recommend the Court enter and publish an Order of Discipline of the following:

"1. Respondent be disciplined by indefinite suspension from the practice of law in accordance with Supreme Court Rule 203(a)(2); however, this discipline shall be probated on the following terms and conditions as set out in Supreme Court Rule 203(a)(5).

"2. Judge Herbert Walton, Administrative Judge of the 10th Judicial District, retired, will supervise Respondent's legal practice for a period of three (3) years from the Supreme Court Order authorizing this plan.

"3. Judge Walton shall be acting as an officer of the Court and as agent for the Court as supervisor of probation in monitoring the legal practice of Respondent. Judge Walton shall be afforded all immunities granted by Supreme Court Rule 223 during the course of his activities as directed by the Supreme Court Order.

"4. Respondent will allow Judge Walton access to his files, his case inventory, his secretary, and his trust account. He shall periodically, but at least once per month, check the following:

a. The status of each case on Respondent's case list;

b. Responses to client requests for information;

c. Respondent's trust account.

Judge Walton shall furnish quarterly reports to the Disciplinary Administrator regarding Respondent's performance.

"5. Judge Walton shall, by separate writing, acknowledge that he has read this proposed plan and that he agrees to serve in the capacity of supervising Respondent as outlined herein, and, further, that he has already reviewed the case inventory of Respondent, familiarized himself in a general way with the client files and general type of practice of Respondent, and states that there appears to be no apparent, significant problems with the case inventory of the Respondent.

## "REHABILITATION

"1. Respondent shall not possess or use any controlled substances, as defined in K.S.A. 65-4101(e), except as prescribed by Respondent's personal physician and under his/her direct care.

"2. Respondent shall submit to random drug tests, at his own expense, to be conducted not less than four (4) times per year.

"3. Respondent shall attend meetings of Narcotics Anonymous, or other approved organization, on a regular basis.

"4. Respondent shall fully cooperate with all lay persons, health care providers, and other members of the bench and bar as may be required or approved by Judge Walton in the interest of completing his personal and professional rehabilitation.

"5. During each year of Respondent's probation, he shall perform at least one hundred (100) hours of *pro bono* legal services for either the Johnson or the Wyandotte County Legal Aid Societies. The Disciplinary Administrator shall approve the *pro bono* legal services to be performed and verify Respondent's compliance with this order.

## "FINANCIAL AFFAIRS

"1. Respondent shall cooperate with Judge Walton and/or his designee to bring his financial affairs in order and to keep his obligations with the state and

federal taxing authorities current. Respondent shall make arrangements with the appropriate taxing authorities to provide for payment of any arrearages on any existing tax liability.

"2. Respondent shall make restitution to Marcia Huehn at the rate of $150 per month until the entire balance of $2,000 plus interest, at the rate of 10% per annum from February 8, 1993, has been fully paid and satisfied. In the alternative, Respondent may, upon the acceptance and approval of Marcia Huehn and Reginald Carter, pursue post-conviction remedies on behalf of Mr. Carter in accordance with the agreement previously entered into between Huehn, Carter and Respondent. Respondent shall make arrangements for local counsel and shall be obligated to provide whatever compensation is required by local counsel to assist Respondent in presenting any motions for post-conviction relief in the Missouri courts.

### "CONCLUSION

"Upon report of any misconduct or non-compliance with these Orders by Respondent, the Disciplinary Administrator shall promptly inform the Supreme Court and an Order shall be issued directing Respondent show cause why these Orders should not be vacated and such discipline imposed by the Court as it deems just and proper without further formal proceedings.

"Upon receipt of executed affidavits by Respondent and Judge Walton that Respondent has fully complied with the terms and conditions of this Order, and that supervision is no longer necessary, the Disciplinary Administrator shall advise the Supreme Court in writing that the discipline of Respondent should be terminated. If Judge Walton declines or fails to file an affidavit of compliance, the Disciplinary Administrator shall investigate to determine whether Respondent should be fully reinstated. In that event, the Disciplinary Administrator may recommend reinstatement, continuation of discipline on specified terms and conditions, or that other discipline be imposed.

"We unanimously adopt this plan of discipline. Costs shall be assessed to Respondent."

In the response to the findings, conclusions, and recommendations of the panel, Bryan E. Nelson, by written declaration, indicated he did not wish to file exceptions to the final hearing report, findings, and recommendations of the State Board for Discipline of Attorneys.

As we noted in *State v. Russo*, 230 Kan. 5, 630 P.2d 711 (1981), the reports and recommendations of the Board for Discipline of Attorneys and its hearing panel are advisory and not binding upon this court. At the same time, the findings of fact entered by the panel and its conclusions of law, particularly when no exceptions are filed by the respondent, are entitled to serious consideration

by this court. We concur with the findings and conclusions of the panel and adopt them as our own. The findings are supported by clear and convincing evidence.

The respondent's act of attempting to possess cocaine was a felony offense under Kansas law. In accord with the panel's conclusion, we conclude that the respondent did engage in professional misconduct by committing a criminal act that reflects adversely on his honesty, trustworthiness, and his fitness to practice law. MRPC 8.4 (b), (d), and (g) (1993 Kan. Ct. R. Annot. 347).

The question of whether the respondent made any false statements to the court in defending himself in his criminal case was a contested factual issue before the hearing panel. The respondent vigorously denied that he misrepresented anything to the court and basically claimed that his attorneys provided the information to the court indicating that the cocaine found in his car was planted by the police or by police informants. He defended this issue before the panel on the basis that no witness was brought forward to show that the respondent ever directly said that the cocaine was planted in his car. He claimed before the panel that he should have been more careful about monitoring what his attorneys may have said in pleadings before the court. A large portion of the record was devoted to this issue.

Based upon controverted evidence, the panel concluded that the evidence established violations of MRPC 8.4 (c), (d), and (g); that is, the respondent engaged in professional misconduct involving dishonesty, fraud, deceit, or misrepresentation. The panel based its conclusion on the evidence presented as well as a statement of the respondent to the court at the time of sentencing:

"Any statements that I previously made which inferred or indicated that law enforcement planted the contraband in my car on the date in question were false, and that I believe the District Attorney's Office and law enforcement acted professionally in both the investigation and prosecution of this case."

While the respondent filed no exceptions to the report of the hearing panel, before this court the respondent steadfastly denied that he engaged in any conduct involving dishonesty, fraud, deceit, or misrepresentation and, as he did before the panel, claimed that he was not careful with his attorneys in monitoring what they said before the court in his criminal case.

With very few exceptions, this court has imposed either suspension or disbarment as a sanction when an attorney has been convicted of a felony offense. See *In re Leitner*, 254 Kan. 940, 869 P.2d 738 (1994); *In re Pomeroy*, 252 Kan. 1044, 850 P.2d 222 (1993); *In re Jarczyk*, 252 Kan. 4, 847 P.2d 1190 (1992); *In re Evans*, 252 Kan. 1, 841 P.2d 461 (1992); *In re Morris*, 251 Kan. 592, 834 P.2d 384 (1992); *In re Wilson*, 251 Kan. 252, 832 P.2d 347 (1992); *In re Dickson*, 250 Kan. 1, 824 P.2d 197 (1992); *In re Kershner*, 250 Kan. 383, 827 P.2d 1189 (1992); *In re Laing*, 246 Kan. 334, 788 P.2d 284 (1990); *In re Lerner*, 244 Kan. 342, 767 P.2d 1319 (1989); *In re Sowers*, 244 Kan. 594, 771 P.2d 933 (1989); *In re Barritt*, 243 Kan. 519, 757 P.2d 730 (1988); *In re Sturgis*, 239 Kan. 527, 720 P.2d 1118 (1986); *In re Hyter*, 235 Kan. 1, 677 P.2d 1017 (1984); *In re Wriston*, 231 Kan. 576, 645 P.2d 376 (1982); *State v. Russo*, 230 Kan. 5, 630 P.2d 711 (1981); *In re Hutton*, 230 Kan. 3, 630 P.2d 161 (1981); *In re Evans*, 229 Kan. 182, 621 P.2d 991 (1981).

In the case of *In re Smoot*, 243 Kan. 589, 757 P.2d 327 (1988), this court imposed the penalty of public censure upon the respondent for his activity in possessing less than a gram of cocaine. Smoot entered a plea of guilty in the federal district court under a federal charge to one count of possession of cocaine in violation of 21 U.S.C. § 844 (1982), a misdemeanor charge at that time under federal law. The respondent in this case entered a plea of guilty to a State charge of attempted possession of cocaine, which is a class D felony under Kansas law.

In this case, the panel was unanimous in concluding that respondent's conviction violated MRPC 8.4 (b), (d), and (g); that is, that the respondent did commit a criminal act that reflects adversely on his honesty, trustworthiness, or fitness as a lawyer in other respects; that he engaged in conduct that is prejudicial to the administration of justice; and that he did engage in any other conduct that adversely reflects on the lawyer's fitness to practice law. The respondent takes no exceptions to these conclusions, and we adopt these conclusions as our own.

We would note that in the case of *In re Smoot*, the single allegation was a federal misdemeanor conviction for cocaine pos-

session. In this case, we have concluded that the respondent's felony conviction violated MRPC 8.4(b), (d), and (g); that during the course of the criminal prosecution against the respondent, he and his attorneys made certain allegations and that his action violated MRPC 8.4(c), (d), and (g); and that his dealing with two clients violated MRPC 1.4 (1993 Kan. Ct. R. Annot. 267) and 1.16(d) (1993 Kan. Ct. R. Annot. 305). Clear and convincing evidence established all of the above violations.

We disagree with the panel's conclusion that supervision under the circumstances of this case is appropriate. We note that in approaching the panel the respondent did not propose to the panel that he be supervised by a member of the Johnson County Bar Association. The respondent did not believe supervision was necessary: "I don't have any problem with that. I do not believe that I need supervision. I think my law practice that I engage in is impeccable." It was on the recommendation of the panel and the allowance of an additional seven days' time that moved the respondent to present a plan of supervision to the panel. We agree with the respondent that, for the most part, he does in fact practice at a level which would not indicate a necessity for supervision.

We partially agree with the recommendations of the hearing panel when it concludes: "Although we agree that Respondent's breaches of conduct were extremely serious and could warrant disbarment, we are reluctant to recommend such unconditional discipline in this case." We also are reluctant to impose such unconditional discipline, but we do believe that indefinite suspension from the practice of law without probation is warranted under all the circumstances in this case.

IT IS THEREFORE ORDERED that the respondent, Bryan E. Nelson, be indefinitely suspended from the practice of law in the state of Kansas and this suspension date from the date of his temporary suspension which incurred on March 8, 1993. It is further ordered that the respondent shall comply with the provisions of the Supreme Court Rule 218 (1993 Kan. Ct. R. Annot. 187).

IT IS FURTHER ORDERED that any time after the expiration of three years' suspension *and* upon full restitution being made

to Marcia Huehn for the fee advanced by her to the respondent, the respondent may apply for reinstatement under Supreme Court Rule 219 (1993 Kan. Ct. R. Annot. 192).

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and the cost of this action be assessed to the respondent.