No. 73,450

In the Matter of FRED H. BROWN, *Respondent.*

(953 P.2d 1367)

Opinion filed January 23, 1998.

*Stanton A. Hazlett,* disciplinary administrator, argued the cause and was on the brief for petitioner.

*Jack Focht,* of Focht, Hughey & Calvert, of Wichita, argued the cause and was on the brief for respondent, and *Fred H. Brown,* respondent, argued the cause pro se.

*Per Curiam:.* Fred H. Brown's Kansas disciplinary proceeding was initially before us in *In re Brown,* 258 Kan. 731, 907 P.2d 132 (1995) *(Brown* I). We said:

"The final hearing report: (1) found that Brown violated MRPC 8.4(b) (1994 Kan. Ct. R. Annot. 379) (commit a criminal act that reflects adversely on honesty, trustworthiness or fitness), (d) (engage in conduct prejudicial to administration of justice), and (g) (engage in any other conduct that adversely reflects on fitness to practice law); and (2) recommended disbarment. The report noted: 'No evidence was presented on mitigation or aggravation. Thus there is no need to review the *ABA Standards* section on Aggravation and Mitigation.' The petitioner has withdrawn the charge that Brown's conduct violated MRPC 8.4(g)." 258 Kan. at 734.

The record supports, by clear and convincing evidence, the MRPC violations found by the first panel.

Brown was incarcerated in the federal prison at Yankton, South Dakota, at the time of his initial panel hearing. His request for a continuance was denied by the first panel. We remanded in the interest of justice under our supervisory authority over the practice of law to afford Brown the opportunity of appearing in person. The remand to the panel was to hear any factors of mitigation or aggravation Brown or the Disciplinary Administrator wished to submit.

Brown's mitigation hearing was held February 4, 1997 (no member of the first panel served on the second panel). The second panel recommended indefinite suspension, effective from the date of Brown's temporary suspension, March 16, 1994. Brown filed exceptions and appealed the report of the second panel. Brown re-

quests this court to impose probation with supervision. The Disciplinary Administrator requests disbarment. Our jurisdiction is under Kansas Supreme Court Rule 212 (1997 Kan. Ct. R. Annot. 226). A majority of the court agrees with the Disciplinary Administrator. Respondent is disbarred. The minority would adopt the second panel's recommendation of indefinite suspension. Brown has been disbarred in Nebraska. See *State ex rel. NSBA v. Brown,* 251 Neb. 815, 560 N.W.2d 123 (1997).

Brown has felony convictions resulting from his trial in federal district court in Nebraska for conspiracy and possession of cocaine with intent to distribute. He raises two issues:

(a) Did the panel properly consider the evidence submitted at the hearing when making its findings of fact and conclusions? (b) Was the panel's recommendation of indefinite suspension excessive considering the evidence?

We answer: (a) yes and (b) no.

## FACTS

The pertinent facts are well stated in paragraphs 3 through 18 of the second panel's report:

"3. On February 19, 1993, Respondent was charged in the U.S. District Court for the District of Nebraska, with two felonies: conspiracy and possession of cocaine with intent to distribute, Case No. 8:CR93-24. On February 4, 1994, a jury found Respondent guilty on both counts.

"4. On July 25, 1994, Respondent was sentenced to fifteen (15) months in prison to be followed by three (3) years of supervised release and a fine of $10,000.

"5. As a result of the above-stated events, Respondent was temporarily suspended from the practice of law in Nebraska on February 11, 1994. By order of the Nebraska Supreme Court entered this year, Mr. Brown was disbarred from the practice of law in Nebraska. 251 Neb. 815 (1997).

"6. In a letter dated March 9, 1994, Respondent notified the Clerk of the Kansas Supreme Court that he had been temporarily suspended from practice in Nebraska.

"7. In a letter dated March 10, 1994, Respondent notified the Kansas Disciplinary Administrator's Office that he had been temporarily suspended from practice in Nebraska.

"8. On March 16, 1994, the Kansas Supreme Court ordered that Respondent be temporarily suspended from the practice of law.

"9. On September 20, 1994, the Kansas Disciplinary Administrator filed a formal complaint against Respondent, seeking Respondent's disbarment from the practice of law in Kansas.

"10. The hearing on Respondent's disciplinary case was set for November 29, 1994. Respondent, then serving his prison sentence in Yankton, South Dakota, filed a motion seeking a continuance of the hearing until after his discharge from prison, scheduled for March 5, 1995, so that he could attend the hearing and present evidence in his own behalf.

"11. The panel denied the motion for continuance, held the hearing on November 29, 1994, and issued a report finding Respondent had violated Rules 8.4(b), (d) and (g). The panel recommended disbarment. Respondent had filed an answer but did not appear, either in person or by counsel. Respondent filed exceptions to the report.

"12. Respondent was released from prison as anticipated on March 5, 1995.

"13. On appeal, the Kansas Supreme Court ordered the matter remanded for hearing on any factors of mitigation or aggravation Respondent or the Disciplinary Administrator wished to submit. The order was dated December 8, 1995.

"14. On February 4, 1997, this matter came on for hearing as ordered by the Supreme Court, for the purpose of taking evidence in mitigation or aggravation of the violations found by the initial panel, with the exception of the alleged violation of Rule 8.4(g), which had been withdrawn.

"15. Among the exhibits admitted at the hearing were the following documents from Respondent's federal felony case: the presentence investigation report (PSI), the judgment and commitment order, the memorandum and order regarding challenges to the PSI, the opinion of the Eighth Circuit Court of Appeals affirming Respondent's convictions. [*United States v. Brown*, 60 F.3d 1314 (8th Cir. 1995)].

"16. Also admitted were documents showing Respondent's January, 1993 convictions in Douglas County, Nebraska, for possession of marijuana weighing one ounce or less and use or possession with intent to use paraphernalia to manufacture, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance.

"17. Also admitted were documents showing Respondent's 1974 arrest and conviction in the Hampton (Virginia) General District Court for possession of marijuana.

"18. Also admitted was a copy of Respondent's Petition for Admission to the Bar of the State of Kansas, in which Respondent reported 'none,' to the statement, 'I further state that I have never pleaded guilty nor have I been convicted of a felony or of a misdemeanor other than minor traffic offenses, except.' The petition was signed on April 16, 1982."

The second panel acknowledged the Nebraska disbarment, but chose not to impose that sanction, noting that "comparing this case

to cases from other jurisdictions, while instructive, is of limited value."

The second panel's pertinent conclusions, with footnotes and exhibit references deleted, were:

"While Brown's case requires some measure of discipline, after examining the record and applicable case law from this jurisdiction, we do not recommend the extreme sanction of disbarment.

"The Disciplinary Administrator places much emphasis on Brown's lack of candor to the court. In the Memorandum and Order entered in *United States v. Brown*, 8: CR93-00024 (D. Neb. Entered July 11, 1994), the District Court found as follows:

'On June 14, 1993, Brown appeared before United States Magistrate Judge Kathleen A. Jaudzemis and admitted he had violated his conditions of pretrial release in that cocaine was detected in his urine. Magistrate Judge Jaudzemis proceeded to determine what disposition would be appropriate and took evidence. Brown testified under oath. The prosecutor asked Brown:

"Q. And you've injected it in the past, haven't you?

"A. No, that's not true.

"Q. Never injected cocaine?

"A. No.

"Brown lied. Indeed, at his subsequent trial Brown admitted injecting cocaine numerous times. For example, Brown admitted during direct examination by his own counsel that in June and July, 1992, he was 'shooting up with Mary Cox.'

"Brown argued then, and at the hearing before this panel testified, that he understood the question to refer only to the period under scrutiny by the magistrate judge. The court found, however, that 'Brown, particularly given his legal training, could not have reasonably understood the questions to be limited as to time.' We, too, believe that Brown was less than honest with the court; however, we are persuaded that his testimony can be attributed to and is a consequence of his drug addiction.

"The Disciplinary Administrator also points to Brown's failure to include a 1974 conviction for possession of marijuana on his Petition for Admission to the Bar of the State of Kansas. Brown testified that he did not include the conviction, because he had been told that "such records are destroyed after ten years and accordingly considered discharged." As a result, Brown believed that the matter has been expunged and need not be disclosed. While, perhaps, not the most prudent course of action for Brown to take, the Panel finds that Brown was honest when completing his application.

"The record also reflects that Brown was convicted of possession of marijuana, a misdemeanor, less than one month prior to his federal trial for cocaine possession and conspiracy to distribute. The Panel believes that this is so closely connected in time to the cocaine offense and Brown's addiction as to not warrant separate consideration.

"Since his release from the federal prison at Yankton, South Dakota, Brown has remained drug and alcohol free. He has admitted his addiction and is currently employed. He remains on probation and 'avoids slippery places.' According to Brown, he now spends his free time at the movies or the public library and not in bars. JoLynn Oakman, a Wichita lawyer, corroborated this testimony.

"The record shows he self-reported his (then) temporary suspension from the practice of law in Nebraska and that this is his first offense. His drug involvement did not affect his representation of his clients, although admittedly, they were compelled to seek other counsel. Further, in spite of the fact that his thus-far successful efforts at rehabilitation are a condition of his supervised release, his efforts are, nevertheless, commendable.

"With very few exceptions, the Kansas Supreme Court has imposed either suspension or disbarment as a sanction when an attorney has been convicted of a felony. *In re Nelson,* 255 Kan. 563, 874 P.2d 1201 (1994), and cases cited therein. However, only under the most egregious circumstances has the Court ordered disbarment. See, *e.g., In re Diggs,* 256 Kan. 193, 833 P.2d 1182 (1994)(attorney convicted of one felony count for presenting a false claim and unlawful deprivation of property disbarred).

"Although the Panel does not condone Brown's behavior, we believe he has already been punished by the criminal justice system. Moreover, his clients did not unduly suffer during his period of addiction, and he has remained drug and alcohol free since his incarceration. Although his breaches of conduct were extremely serious, disbarment would be inappropriately severe."

## DISCUSSION

Our standard of review is stated in a familiar quotation from *In re Carson,* 252 Kan. 399, 406, 845 P.2d 47 (1993):

"In *State v. Klassen,* 207 Kan. 414, 415, 485 P.2d 1295 (1971), we explained that we have a 'duty in a disciplinary proceeding to examine the evidence and determine for ourselves the judgment to be entered.' In *State v. Zeigler,* 217 Kan. 748, 755, 538 P.2d 643 (1975), this court stated that, although the report of the disciplinary board 'is advisory only, it will be given the same dignity as a special verdict by a jury, or the findings of a trial court, and will be adopted where amply sustained by the evidence, or where it is not against the clear weight of the evidence, or where the evidence consisted of sharply conflicting testimony.' [Citation omitted.]"

Brown takes exception to the following conclusion in the report:

"Brown was convicted of possession of marijuana, a misdemeanor, less than one month prior to his federal trial for cocaine possession and conspiracy to distribute. The Panel believes that this is so closely connected in time to the cocaine offense and Brown's addiction as to not warrant separate consideration."

Brown observes that his Nebraska marijuana conviction was an "infraction" under Nebraska law, not a misdemeanor, and the conviction occurred more than a month before his indictment in the federal case, not the trial. Also, it arose out of the same factual scenario as the federal case.

The Disciplinary Administrator concedes these inaccuracies in the report, but reasons that because the panel did not give "separate consideration" to that offense, it had no bearing or effect on the panel's recommendation. The Disciplinary Administrator's point is well taken.

Brown also takes exception to the conclusion in the report that Brown "lied." The report references the transcript in the federal case from a June 14, 1993, appearance before a federal magistrate judge. Brown does not dispute the accuracy of the transcript, but claims that he understood the question about whether he had injected cocaine to refer to a shorter time period.

The report concluded: "We, too, believe that Brown was less than honest with the court; however, we are persuaded that his testimony can be attributed to and is a consequence of his drug addiction." This comment shows that the panel gave Brown the benefit of the doubt as to his "lie," in deciding what discipline to recommend.

Brown takes exception to the following conclusion in the report:

"The Disciplinary Administrator also points to Brown's failure to include a 1974 conviction for possession of marijuana on his Petition for Admission to the Bar of the State of Kansas. Brown testified that he did not include the conviction, because he had been told that 'such records are destroyed after ten years and accordingly considered discharged.' As a result, Brown believed that the matter has been expunged and need not be disclosed. While, perhaps, not the most prudent course of action for Brown to take, the Panel finds that Brown was honest when completing his application."

The panel essentially accepted Brown's reason for not putting the conviction on his application.

Brown's exceptions have no merit. The panel's conclusions are favorable to Brown, acknowledging his contentions. The panel's findings show proper consideration of the evidence presented.

Brown contends that the panel did not consider his evidence of previous good character and reputation in the community. He submitted the transcript from his Nebraska disciplinary hearing of testimony by two Nebraska attorneys, James A. Moylan and John Steichen, who had formerly practiced with him. Their testimony was favorable to Brown, and both recommended he be allowed to return to law practice. The panel also heard testimony from JoLynn Oakman, a Wichita attorney, and admitted a letter from another Wichita attorney, Robert Hughes. Both were Brown's law school classmates. The Wichita attorneys, who offered to supervise Brown's law practice if allowed, did not have sufficient exposure to Brown to testify as to his professional abilities. Brown had done some legal research for Oakman. Hughes had only recently reestablished contact with Brown. There was no other evidence of good character or reputation presented. This lack of evidence supports the panel's decision not to list good character and reputation as mitigating factors. Brown's testimony about his marital problems was minimal. He failed to show how those problems justified his serious drug abuse problem. The panel's failure to view personal misfortune as a mitigating factor was appropriate.

Brown acknowledged his drug problem and criminal convictions, and he described his rehabilitation efforts. He moved to Wichita after being released from federal prison in March 1995 and currently works as a grocery clerk. Brown has never practiced law in Kansas. He graduated from law school in 1982 and practiced in Omaha, Nebraska, until his license was temporarily suspended because of his federal drug convictions. As part of his supervised release, he must stay employed, must continue in counseling, and is subject to random drug testing. He has not used drugs since a 1994 relapse. Before his convictions, he had used drugs one to three times a week for approximately 18 months. Brown acknowledged that he would have to deal with his drug problem for the rest of his life. He intends to continue in counseling, even after completing probation.

The current panel members questioned Brown extensively about his drug use, his lying to the federal magistrate judge, his relapses,

and his marijuana convictions. They also asked Brown about supervision, if he were placed on probation.

Brown's evidence regarding practice supervision was not strong, and it is not surprising that the panel does not mention it. Nonetheless, since the panel recommended indefinite suspension, as opposed to disbarment, Brown must have made a favorable impression.

## Disciplinary Cases

Both the Disciplinary Administrator and Brown discuss several Kansas disciplinary cases, including *In re Smoot*, 243 Kan. 589, 757 P.2d 327 (1988) (public censure imposed on attorney who pled guilty in federal district court to possession of less than a gram of cocaine, a misdemeanor under the applicable federal statute, although it would have been a felony under Kansas law; attorney had completed his 4-month incarceration at the time of the disciplinary hearing); *In re Barritt*, 243 Kan. 519, 757 P.2d 730 (1988) (conviction of class C felony of aiding and abetting delivery of cocaine warranted indefinite suspension); *In re Diggs*, 243 Kan. 587, 757 P.2d 326 (1988) (conviction for possession of controlled substance with intent to distribute warranted disbarment; attorney had been disciplined before, receiving public censure, following convictions of presenting false claim and unlawful deprivation of property arising from discrepancies in claim forms submitted pursuant to Federal Job Training Partnership Act); *In re Nelson*, 255 Kan. 555, 874 P.2d 1201 (1994) (indefinite suspension imposed on attorney who pled guilty to attempted possession of cocaine, a felony, although the Disciplinary Administrator recommended disbarment and the panel recommended indefinite suspension, to be probated under certain terms); *In re Robertson*, 256 Kan. 505, 886 P.2d 806 (1994) (possession of cocaine warranted published censure in light of mitigating facts, including lack of previous record, acquittal on ground of entrapment on last instance of possession, and lack of evidence of continued misconduct); *In re Gooding*, 260 Kan. 199, 917 P.2d 414 (1996) (attorney's conduct in using alcohol and cocaine over course of 10 years warranted discipline of 2 years' probation; no criminal drug conviction involved); and *In re Phillips*, 260 Kan.

909, 925 P.2d 435 (1996) (indefinite suspension, conditionally lifted by 3 years' supervised probation, warranted for attorney's failure to communicate to client the basis or rate of fee, failure to appear at pretrial hearing, failure to keep client reasonably informed regarding child support modification proceedings, representation of client while attorney was physically and mentally impaired by drug addiction, commingling retainer and personal funds, submission of false statement to court, and extensive use of crack cocaine).

Brown positions himself between *Smoot* and *Barritt,* arguing that supervised probation is appropriate. Brown points out that the sentencing judge in his federal case characterized his conspiracy involvement as "really quite minor," Brown being an "addicted lawyer who wanted a safe and consistent source of supply and was willing to assist Buck [the woman supplying Brown] in certain minor ways to that end." Buck was a workers compensation client of Brown's. He would send her compensation checks without deducting any attorney fees, providing her limited financing. He also apparently paid her bail in a Missouri drug case. Brown argues that *Phillips* and *Gooding* show a trend toward more lenient and compassionate discipline for drug-addicted attorneys.

The Disciplinary Administrator compares Brown's situation to *Diggs.* Brown had two prior drug convictions (the 1992 Nebraska infraction and the 1974 Virginia conviction) and also lied to the federal magistrate judge. The Disciplinary Administrator emphasizes Brown's disbarment in Nebraska.

We have labeled disbarment as an "extreme sanction." *Robertson,* 256 Kan. at 508. We said in *Brown I,* 258 Kan. at 736:

"Clearly, mitigating circumstances can influence the final result of a disciplinary hearing, even when the reason for the hearing is a felony conviction. Mitigating circumstances could make the difference between a recommendation of indefinite suspension and disbarment."

Section 5.11 of the ABA Standards for Imposing Lawyer Sanctions (ABA/BNA Lawyers' Manual on Professional Conduct § 01:827 [1997]) provides:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses . . . ."

Brown was convicted of federal crimes involving illegal drug distribution.

Brown's entire legal career was in Nebraska. The Disciplinary Rules of the Nebraska Supreme Court provide for suspension for a fixed period of time as well as for disbarment. Neb. Ct. R. of Discipline 4 (rev. 1996). Both disbarment and suspension require an application for reinstatement. Neb. Ct. R. of Discipline 10 (rev. 1996). The Supreme Court of Nebraska in disbarring Brown said:

"To determine whether and to what extent discipline should be imposed, it is necessary that the following factors be considered: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law." 251 Neb. at 821.

"While Brown urges that his drug involvement did not affect his clients, the reality is that his indictment made it necessary for his then clients to seek other counsel. Moreover, while Brown is to be commended for his efforts in pursing rehabilitation, the fact is that he is compelled to do so by the terms of his supervised release from prison. In *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995), a misappropriation case, we did not consider the 12-year abstention from alcohol abuse and the almost 6-year freedom from nonmedical prescription drug use to militate against disbarment. We find nothing which mitigates the punishment which should be imposed in this case.

"CONCLUSION

"Balancing Brown's interest in regaining his privilege to practice law against the nature of his offenses, the need to deter others from similar misconduct, the need to maintain the reputation of the bar as a whole, and the need to protect the public, we determine that Brown must be, and hereby is, disbarred, effective immediately." 251 Neb. at 824.

A majority of this court agrees.

IT IS THEREFORE ORDERED that Fred H. Brown be and he is hereby disbarred from the practice of law in the state of Kansas and his license and privilege to practice law are hereby revoked.

IT IS FURTHER ORDERED that the Clerk of the Appellate Courts strike the name of Fred H. Brown from the roll of attorneys licensed to practice law in the state of Kansas and that respondent forthwith shall comply with Supreme Court Rule 218 (1997 Kan. Ct. R. Annot. 235).

IT IS FURTHER ORDERED that this order shall be published in the Kansas Reports and that the costs herein be assessed to the respondent.