RESPONDENT PRO SE
Elton D. Johnson
South Bend, Indiana

ATTORNEYS FOR THE INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Secretary
John P. Higgins, Staff Attorney
Indianapolis, Indiana

FILED
May 18 2016, 9:06 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# In the
# Indiana Supreme Court

No. 71S00-1408-DI-544

IN THE MATTER OF:

ELTON D. JOHNSON,

*Respondent.*

Attorney Discipline Action
Hearing Officer Judith Hawley Conley

**May 18, 2016**

**Per Curiam.**

We find that Respondent, Elton Johnson, committed attorney misconduct by providing incompetent representation, converting client funds, and failing to cooperate with the disciplinary process. For this misconduct, we conclude that Respondent should be disbarred.

This matter is before the Court on the report of the hearing officer appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Amended Verified Complaint for Disciplinary Action." Respondent's 2010 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4.

**Procedural Background and Facts**

The Commission filed an "Amended Verified Complaint for Disciplinary Action" against Respondent on August 27, 2014.  Respondent was served and did not timely file an answer.[1] Accordingly, the Commission filed an "Affidavit and Application for Judgment on the Amended Verified Complaint," and the hearing officer took the facts alleged in the amended verified complaint as true.[2]

No petition for review of the hearing officer's report has been filed.  When neither party challenges the findings of the hearing officer, "we accept and adopt those findings but reserve final judgment as to misconduct and sanction."  Matter of Levy, 726 N.E.2d 1257, 1258 (Ind. 2000).

Count 1.  "Client 1" pleaded guilty in federal court to transferring obscene materials to a minor.  Upon his release from prison in 2011, Client 1 paid $10,000 to the Terani Law Firm ("Terani") to evaluate his legal options regarding the requirement that he register as a sex offender.  Terani forwarded the case to Respondent, paying him a few thousand dollars for a legal memorandum.  Client 1 was not informed how the fee was split; in fact, the contract between Terani and Respondent forbade such disclosure.

Respondent, in turn, delegated the work to an individual who was either attending law school or a recent graduate.  This individual drafted, and Respondent forwarded to Terani and Client 1, a four-and-one-half page legal memorandum recommending a three-part plan that had virtually no chance of providing any relief to Client 1.  In fact, if the plan had worked as intended, Client 1 could have been retried and required to serve additional prison time.

---

[1] Respondent eventually filed a belated answer, which the hearing officer declined to accept. Given Respondent's refusal to cooperate with the Commission's investigation, his failure to comply with the deadlines imposed under the Admission and Discipline Rules, and his failure to file a petition for review or brief on sanction, we likewise decline to give Respondent's belated answer any effect.

[2] Separately, another verified complaint against Respondent is currently pending before the same hearing officer in Case No. 71S00-1405-DI-330.  That case stems from Respondent's criminal conviction for battering his stepson.  Our disposition of the matter before us today obviates the need for further proceedings in DI-330.

Respondent did not inform Client 1 of this possibility, and Client 1 previously had told Respondent he did not want to pursue any legal avenue that potentially could result in additional prison time.

Client 1 hired Respondent to pursue the plan. Client 1 paid Respondent a total of $32,800 in several installments, not all of which were deposited into Respondent's trust account. Respondent did no additional work on the case. Client 1 eventually fired Respondent and hired replacement counsel, who requested an accounting from Respondent of time spent and disbursements made on Client 1's behalf. Respondent either could not or would not provide such an accounting.

Respondent billed Client 1 at attorney rates for clerical work, and even did so at a rate higher than the attorney rate specified in his fee agreement with Client 1. Respondent also invoiced Client 1 for services rendered after Client 1 fired Respondent, including for time spent responding to the disciplinary grievance filed against Respondent. Respondent made knowingly false statements to the Commission during its investigation, including that he had worked 425 hours on Client 1's case and that the individual who drafted the memo was an attorney when he worked on the case. Respondent has not refunded any money to Client 1.

Count 2. In February 2012, "Client 2" paid Terani $9,500 to evaluate his options regarding a 50-year sentence he was serving. Terani retained Respondent to work on the case for $5,500. Client 2 was not informed how the fee was split. Client 2 had until March 21, 2012, to file a federal habeas petition. Respondent did not file a habeas petition or confer with Client 2 about doing so. Several months after the deadline had passed, Respondent advised Client 2 there were no grounds to file a habeas petition. Client 2 eventually filed a *pro se* habeas petition, which was denied as untimely.

Count 3. In 2010, "Clients 3" hired Respondent to investigate suspected misconduct by the trustee of a trust created by a pour-over will. The parties agreed that Respondent's billing rate would be $150 an hour, Respondent would make no withdrawals from his attorney trust account without the prior approval of Clients 3, and Respondent would provide Clients 3 with

monthly billing statements. Clients 3 gave Respondent $23,210 as an advance and another $5,000 a month later. Respondent did not deposit this latter check into his attorney trust account.

Despite the parties' agreement to the contrary, Respondent began withdrawing funds without the prior approval of Clients 3 and failed to provide Clients 3 with monthly billing statements. When Respondent was fired by Clients 3, Respondent submitted a bill for 64.02 hours (including 4.9 hours for gathering their file following his discharge), a refund of just $4,445, and no work product. When Clients 3 protested, Respondent said, "What are you going to do, sue me?" Respondent then laughed and ended the meeting. Respondent still owes Clients 3 a refund of at least $8,452.

Count 4. "Choice Hotels" filed suit against a franchisee and three passive shareholders ("Clients 4") of the franchisee, alleging that Clients 4 were individually liable because they had signed the franchise agreement in their individual capacities. In fact the signatures of Clients 4 had been forged by some unknown party. After default had been entered in December 2011, Clients 4 hired Respondent to attempt to have the entry of default vacated and otherwise defend them in the lawsuit. The fee agreement called for a non-refundable retainer of $2,500, against which services would be billed at a rate of $175 an hour.

Respondent failed to file an answer, to move to vacate the default, to forward requests for admissions to Clients 4, to respond to Choice Hotels' motion for summary judgment, or even to inform Clients 4 that a motion for summary judgment had been filed. The court entered summary judgment of over $430,000 in favor of Choice Hotels in February 2013. Unaware that anything was amiss, Clients 4 paid Respondent an additional $2,000. Upon discovering that summary judgment had been entered against them, Clients 4 hired replacement counsel, who was unsuccessful in trying to vacate the judgment. *See* Choice Hotels Int'l, Inc. v. Grover, 792 F.3d 753 (7th Cir. 2015), *cert. denied*. Respondent has not refunded any money to Clients 4.

Count 5. Respondent failed to maintain and retain a contemporaneous individual accounting of whose money he was holding in his attorney trust accounts. Respondent made at least nine trust account checks payable to "cash," and he transferred approximately $9,000 of

client money from his trust account to his business account to cover personal and business related expenses. Respondent fired a paralegal because of her refusal to deposit client money directly into his business account.

Count 6. On several occasions, Respondent failed to accept delivery of mailings the Commission sent to him regarding disciplinary matters and failed to timely respond to the Commission's demands for information. Respondent's noncooperation with the disciplinary process has resulted in multiple show cause proceedings, and Respondent has been suspended since March 2014 due to his noncooperation.

The hearing officer found the following facts in aggravation: (1) Respondent has been the subject of multiple noncooperation proceedings; (2) Respondent acted with a dishonest or selfish motive; (3) Respondent committed multiple acts of conversion and ignored multiple demands by the Commission; (4) Respondent refused to cooperate with the Commission and has failed to participate in the disciplinary process; (5) Respondent made false statements to the Commission; (6) Respondent has not acknowledged the wrongful nature of his conduct; and (7) Respondent has made no effort to make restitution. The hearing officer found no facts in mitigation and recommended that Respondent be disbarred.

## Discussion

We concur in the hearing officer's findings of fact and conclude that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.1: Failure to provide competent representation.

1.3: Failure to act with reasonable diligence and promptness.

1.4(a): Failure to keep a client reasonably informed about the status of a matter.

1.4(b): Failure to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.

1.5(a): Making an agreement for, charging, or collecting an unreasonable fee.

1.5(e):  Failure to obtain a client's approval of a fee division between lawyers who are not in the same firm.

1.15(a):  Failure to deposit legal fees paid in advance into a client trust account.

1.15(d):  Failure to render promptly a full accounting regarding a client's property upon request by the client.

1.16(d):  Failure to refund an unearned fee upon termination of representation.

8.1(a):  Knowingly making a false statement of material fact to the Disciplinary Commission in connection with a disciplinary matter.

8.1(b):  Failure to respond in a timely manner to the Commission's demands for information.

8.4(b):  Committing a criminal act (conversion) that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

8.4(c):  Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

In addition, we conclude that Respondent violated the following Indiana Admission and Discipline Rules:

23(29)(a)(2):  Failure to create, maintain, or retain appropriate trust account records.

23(29)(a)(3) and (4):  Failure to create, maintain, or retain accurate trust account records and client ledgers.

23(29)(a)(5):  Making withdrawals from a trust account by checks payable to "cash."

During his short-lived legal career Respondent has demonstrated a continuing pattern of serious misconduct, much of it predicated upon efforts to unjustly enrich himself at his clients' expense.  In exercising our disciplinary authority, we have an obligation to protect the public and the profession from the tactics of unscrupulous lawyers.  *See* Matter of Shumate, 647 N.E.2d 321, 325 (Ind. 1995).  We consistently have imposed disbarment where a lawyer exhibits a pattern of conversion of client funds, dishonesty, or deception of clients.  Id.; Matter of Ouellette, 37 N.E.3d 490 (Ind. 2015); Matter of Stochel, 34 N.E.3d 1207 (Ind. 2015); Matter of Brown, 766 N.E.2d 363 (Ind. 2002).  Respondent's neglect, incompetence, dishonesty, conversion of client

funds, noncooperation with the Commission, and failure to meaningfully participate in these proceedings all persuade us that disbarment is the appropriate sanction here as well.

## Conclusion

Respondent already is under indefinite suspension for failure to cooperate with the Commission's investigation and a separate suspension for noncompliance with continuing legal education requirements. For Respondent's professional misconduct, the Court disbars Respondent from the practice of law in this state effective immediately. Respondent shall fulfill all the duties of a disbarred attorney under Admission and Discipline Rule 23(26). The costs of this proceeding are assessed against Respondent, and the hearing officer appointed in this case is discharged.

All Justices concur.