


FILED

Mar 10 2020, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 19S-DI-71

## In the Matter of
## Raymond Gupta,
*Respondent.*

---

Decided: March 10, 2020

Attorney Discipline Action

---

### Per Curiam Opinion

Justices Massa, Slaughter, and Goff concur.
Chief Justice Rush and Justice David dissent.

**Per curiam.**

We find that Respondent, Raymond Gupta, committed attorney misconduct by, among other things, mismanaging his attorney trust accounts, charging and collecting unreasonable amounts for fees and expenses, neglecting numerous client matters, making false statements to the Commission, and evading the payment of income taxes. For this misconduct, we conclude that Respondent should be suspended from the practice of law for at least three years without automatic reinstatement.

Pursuant to Indiana Admission and Discipline Rule 23(12.1)(b), the Indiana Supreme Court Disciplinary Commission and Respondent have submitted for approval a conditional agreement for discipline stipulating agreed facts, costs, and proposed discipline. Respondent's 1995 admission to this state's bar subjects him to this Court's disciplinary jurisdiction. *See* IND. CONST. art. 7, § 4. The Court approves the agreement and proposed discipline.

# Stipulated Facts

Respondent admits to twenty-two separate counts of widespread misconduct spanning several years and consisting generally of criminal activity, dishonesty, gross financial mismanagement, and severe neglect of client matters. Respondent has been under an order of emergency interim suspension since June 2019. *Matter of Gupta*, 123 N.E.3d 696 (Ind. 2019). We briefly summarize below some of the more egregious counts of admitted misconduct, distilled from a conditional agreement comprising 72 pages and nearly 700 paragraphs.

Respondent has willfully failed to file federal income tax returns from approximately 2010 through the present, despite having earned substantial income during that time through his representation of clients in personal injury and medical malpractice cases. Respondent has been indicted in federal court on charges of tax evasion, and that prosecution remains pending as of this writing.

Respondent mismanaged his two Indiana trust accounts from 2010 through 2018. Among other things, Respondent failed to keep adequate records, commingled personal and client funds, used trust account funds to pay personal or business expenses, and failed to timely disburse settlement funds owed to clients or third parties.

Respondent's contingent fee agreements required clients to pay for any expenses Respondent deemed necessary. Respondent routinely billed clients unreasonable amounts for travel and other expenses. Respondent also referred clients to several consultants with whom Respondent had professional relationships, and Respondent allowed those consultants to submit requests for payment without providing invoices for work performed. Respondent paid these amounts without question and without advance consultation with his clients. In one particularly galling instance, Respondent charged his client $13,000 for payments to a consulting medical clinic. Not only had the client not approved this payment, but in fact Respondent had paid only $4,000 to the clinic on the client's behalf.

Respondent, the sole owner and manager of his firm, was frequently absent from his law office. He delegated broad accounting authority to a paralegal, Danica Blecic, who had minimal or no accounting training or knowledge. Blecic and other nonlawyer assistants also conducted initial client intakes despite having no training or knowledge regarding conflict screening. Beginning in 2016, Respondent's firm began accepting client referrals from a California for-profit corporation that does not qualify as a service provider authorized to make such referrals.

Respondent neglected numerous client matters, often resulting in substantial prejudice to his clients. Count 16, involving a medical malpractice matter, is one illustrative example among many. Respondent did not timely respond to discovery requests or to subsequent outreach efforts by opposing counsel, and he failed to attend a conference to finalize composition of the medical review panel. As a result, the defendants filed motions to dismiss the case, which the court granted. Soon thereafter successor counsel appeared on behalf of "Client 16" and filed a motion to reconsider the order of dismissal. The defendants then filed a response in which their counsel detailed numerous unsolicited

communications they had received from Client 16 regarding Client 16's inability to contact Respondent, defense counsel's forwarding of these communications to Respondent, and Respondent's lack of response to these forwarded communications. The court denied the motion to reconsider.

Respondent's representation of clients often suffered from other shortcomings as well. For example, "Client 4" hired Respondent to pursue a personal injury claim arising from a car accident. The other driver died in 2011 and a supervised estate was opened for him. The estate was represented by counsel and the decedent's daughter served as personal representative, and the estate was closed as insolvent in March 2013. Initially unaware that the other driver was dead, Respondent filed a complaint against him on Client 4's behalf in May 2013. Later, Respondent petitioned to reopen the decedent's estate and to have a special administrator appointed for purposes of defending against Client 4's complaint. The court granted that motion and, at Respondent's request, appointed Blecic as special administrator. Respondent never contacted the decedent's daughter or the estate's counsel before requesting that his own paralegal be appointed special administrator, and he later falsely claimed to the Commission that he used Blecic as special administrator because he did not know anyone related to the decedent.

In recent years, Respondent has stated to the Commission and various courts that physical and mental health issues were compromising his ability to manage his firm's caseload. Nonetheless, during this time Respondent failed to withdraw from existing client representations and continued to accept new clients.

The parties agree that Respondent violated these Indiana Professional Conduct Rules prohibiting the following misconduct:

1.3: Failing to act with reasonable diligence and promptness.

1.4(a)(2): Failing to reasonably consult with a client about the means by which the client's objectives are to be accomplished.

1.4(a)(3): Failing to keep a client reasonably informed about the status of a matter.

1.4(a)(4): Failing to comply promptly with a client's reasonable requests for information.

1.4(b): Failing to explain a matter to the extent reasonably necessary to permit a client to make informed decisions.

1.5(a): Charging or collecting an unreasonable amount for fees and expenses.

1.5(c): Failing to disclose to a client the method by which a contingent legal fee will be determined.

1.7(a)(2): Representing a client when the representation may be materially limited by the attorney's responsibilities to another client, a former client, or a third person.

1.15(a): Commingling client and attorney funds, and failing to maintain a trust account in a state (Illinois) in which the attorney maintains a separate office.

1.15(b): Maintaining more than a nominal amount of attorney funds in a trust account.

1.15(c): Failing to disburse earned fees and reimbursed expenses from a trust account.

1.15(d): Failing to deliver promptly to a client funds the client is entitled to receive, and to third parties funds they are entitled to receive.

1.16(a)(2): Failing to withdraw from representation of a client when the lawyer's physical or mental ability to represent the client is impaired.

1.16(a)(3): Failing to withdraw from representation after being discharged.[1]

---

[1] The conditional agreement cites Rule 1.16(d), but this appears to be a typographical error in that the disciplinary complaint alleges a violation of Rule 1.16(a)(3) and the admitted misconduct falls squarely within Rule 1.16(a)(3). This discrepancy does not affect our analysis.

5.3(b): Failing to make reasonable efforts to ensure that the conduct of a nonlawyer employee over whom the lawyer has direct supervisory authority is compatible with the professional obligations of the lawyer.

7.3(d): Improperly accepting referrals from a lawyer referral service.

8.1(a): Knowingly making a false statement of material fact to the Disciplinary Commission in connection with a disciplinary matter.

8.4(b): Committing criminal acts (willful failure to file income tax returns) that reflect adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

The parties also agree Respondent violated the following Indiana Admission and Discipline Rules:[2]

23(29)(a)(2) (2010-2016): Failing to create, maintain, or retain appropriate trust account records.

23(29)(a)(3) (2010-2016): Failing to create, maintain, or retain client ledgers for trust accounts.

23(29)(a)(4) (2010-2016): Commingling client funds with other funds of the attorney or firm.

23(29)(a)(5) (2010-2016): Making withdrawals from a trust account without written withdrawal authorization stating the amount and purpose of the withdrawal and the payee, and disbursing payments

---

[2] The time period at issue in this case spans several amendments to Rule 23 that became effective on January 1, 2017, including a substantial revision and reorganization of section 29.

from a trust account using an electronic or telephonic payment system.

23(29)(a)(7) (2010-2016): Inability to produce financial records by electronic, photographic, computer, or other media capable of being reduced to printed format.

23(29)(a)(1) (2017-2018): Failing to keep a deposit and disbursement journal containing a record of deposits to and withdrawals from an attorney trust account.

23(29)(a)(2) (2017-2018): Failing to keep sufficiently detailed client ledgers.

23(29)(a)(6) (2017-2018): Failing to keep records of electronic disbursements or transfers from a trust account.

23(29)(a)(7) (2017-2018): Failing to keep reconciliation reports for a trust account.

23(29)(b) (2017-2018): Inability to produce financial records by electronic, photographic, computer, or other media capable of being reduced to printed format.

23(29)(c)(2) (2017-2018): Paying personal or business expenses directly from a trust account, and failing to withdraw fully earned fees and reimbursed expenses from a trust account.

23(29)(c)(3)(i) (2017-2018): Failing to have periodic trust account bank statements delivered unopened to attorney or to another person who does not have authority to disburse funds, and failure to review periodic trust account statements.

23(29)(c)(3)(ii) (2017-2018): Delegating responsibility of conducting periodic reconciliations between internal trust account records and bank statements to a person who has authority to disburse funds from the trust account.

23(29)(c)(5) (2017-2018): Making cash disbursements from a trust account.

23(29)(c)(6) (2017-2018): Failing to keep records of electronic disbursements or transfers from a trust account.

23(29)(c)(7) (2017-2018): Failing to reconcile internal trust account records with periodic bank account statements.

# Discussion and Discipline

Respondent and the Commission propose that Respondent be suspended from the practice of law for a period of at least three years without automatic reinstatement.

Respondent's pattern of misconduct was wide-ranging, severe, and long-lasting. Many of Respondent's actions were intended to unjustly enrich himself and affiliated consultants at the expense of his clients and the public fisc. Several of Respondent's clients have suffered significant prejudice as a result of Respondent's neglect of their cases and financial mismanagement. Respondent continued to accept clients long after it had become apparent that he could not capably represent them, and he ceased practicing only when forced to do so by an emergency interim suspension. The parties acknowledge in their conditional agreement that "Respondent's actions may warrant a different sanction" (Agreement at 68), and indeed we have disbarred attorneys who have engaged in similarly egregious patterns of misconduct. *See, e.g.*, *Matter of Johnson*, 53 N.E.3d 1177 (Ind. 2016); *Matter of Brown*, 766 N.E.2d 363 (Ind. 2002).

That said, our Admission and Discipline Rules "encourage appropriate agreed dispositions of disciplinary matters," *see* Admis. Disc. R. 23(12.1)(b)(5), and accordingly we have approved in some similar cases agreements for lengthy suspensions without automatic reinstatement rather than disbarment. *See, e.g.*, *Matter of Emmons*, 68 N.E.3d 1068 (Ind. 2017) (approving a three-year suspension without automatic reinstatement where attorney converted guardianship funds and failed to comply with court orders or the disciplinary process); *Matter of Philpot*, 31 N.E.3d 468 (Ind. 2015) (approving a four-year suspension without automatic reinstatement following attorney's federal convictions for mail fraud and theft stemming from his misuse of public funds).

Where the severity and scope of the attorney's misconduct are as extreme as Respondent's pattern of misconduct was here, an attorney who seeks reinstatement will face a particularly steep burden to gain reentry. *See Matter of Gutman*, 599 N.E.2d 604, 608 (Ind. 1992) ("The present fitness to practice law of an attorney seeking reinstatement must be considered in light of the offenses for which the petitioner was disciplined. . . . The more serious the misconduct, the greater its negative impact on future rehabilitation and eventual reinstatement, the greater [the] burden of proof to overcome the implication of unfitness which is conjured by the misconduct"). It will be the rare case in which such a heightened burden will be met, and there is little in the record before us that would suggest Respondent will be capable of doing so.

With these considerations in mind, we conclude that the parties' proposed discipline affords sufficient protection to the public and that the conditional agreement should be accepted in the interest of judicial economy.

# Conclusion

The Court concludes that Respondent violated the Indiana Rules of Professional Conduct and Admission and Discipline Rules as set forth above. Respondent already is under an order of interim suspension. For Respondent's professional misconduct, the Court suspends Respondent from the practice of law in this state for a period of not less than three years, without automatic reinstatement, effective immediately. Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(18).

The costs of this proceeding are assessed against Respondent. Pursuant to the parties' stipulation, the Court hereby orders Respondent to pay the

following expenses in separate checks to be transmitted to the Commission: (1) $10,540.26, payable to the Commission for investigative expenses; and (2) $250.00, payable to the Clerk for court costs. The expenses of the hearing officer will be submitted separately.

With our acceptance of the parties' agreement, the hearing officer appointed in this case is discharged.


Massa, Slaughter, and Goff, JJ., concur.
Rush, C.J., and David, J., dissent and would reject the conditional agreement, believing Respondent should be disbarred.


ATTORNEY FOR RESPONDENT
Michael Brown
Indianapolis, Indiana

ATTORNEYS FOR INDIANA SUPREME COURT
DISCIPLINARY COMMISSION
G. Michael Witte, Executive Director
Larry D. Newman, Staff Attorney
Indianapolis, Indiana